THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES REGINALD TURNER, Defendant-Appellant.

First District (5th Division)   No. 84—286

Opinion filed May 2, 1986.

418

Howard T. Savage, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Inge Fryklund, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Defendant, James Reginald Turner, appeals from a conviction of murder and a 40-year sentence to the Department of Corrections. Defendant was indicted with a codefendant, Eleanor Peterson, for the murder of her husband, Roy Peterson, by means of beating, strangling, and scalding him. The events which resulted in the indictment took place over a 24-hour period. The victim (Roy Peterson) died in the early hours of August 12, 1983, at the Petersons' apartment in Chicago. After a joint jury trial of both defendant Turner and codefendant Peterson, both were found guilty of murder. The two defendants filed separate notices of appeals which have not been consolidated. The following facts are relevant to Turner's appeal.

At approximately 7 a.m. on August 12, 1982, Eleanor Peterson called paramedics to her home. The paramedic found Roy Peterson's body on the bathroom floor. Because of extensive burns and bruises on the body and skin in the full bathtub, the paramedic called the Chicago police department. One of the police investigators, Detective Joseph Strotter, testified at the trial. He stated that Mrs. Peterson first told police that her husband had gone out for the evening and had been involved in a fight, after which he came home and took a bath. She found him on the bathroom floor the next morning. After police informed Mrs. Peterson that a neighbor heard someone leave her apartment early in the morning, she told Detective Strotter that two other men had been in her apartment that night. Mrs. Peterson said that one of the men was Turner and that he had helped her put Roy Peterson into the bath, made sure he stayed there, and then helped take him out. After Mrs. Peterson and Turner decided that Roy was dead, Turner left the apartment. After hearing this, detectives went to Turner's residence.

Mrs. Peterson was questioned at area one headquarters, which

contains two courtrooms. There is no evidence as to whether any judges were available at this time. No effort was made to obtain an arrest warrant before police, including Detective Strotter, went to the Turner home. Turner lived on the second floor of a two-flat building. At the time of the arrest, only he and his mother were home. Detective Strotter testified that he and another detective, both in plain clothes, rang the doorbell which was answered by defendant's mother, Mrs. Turner. They identified themselves as police officers and showed identification to her. They told Mrs. Turner they would like to talk to her son and take him to the station for questioning. Mrs. Turner then turned around and walked up the stairs with the detectives following. At the door to the Turner residence, Mrs. Turner said her son was sleeping and she would get him up. She went to a back bedroom, and defendant came to the front door. The detectives told him what they wanted and Turner agreed to go to the station. The detectives then accompanied Turner to the bedroom so he could dress. Detective Strotter stated that this is customary procedure so as to prevent a suspect from obtaining a weapon. Turner was not handcuffed, no police weapons were displayed, and no one told the detectives that they could not enter the residence. The detectives then took Turner to the station. They gave him his *Miranda* rights in the police car.

Defendant and Mrs. Turner dispute Detective Strotter's account of these events. Mrs. Turner testified that she was outside when two men, who she knew were detectives without being told, walked up to her and asked if defendant lived there and if he was home. She replied yes and went inside and up the stairs with the men following. The police walked into the apartment and back to defendant's bedroom, opened the door without knocking, and went into the room. Mrs. Turner stated that no weapons were used and no identification was shown. She also testified that she doesn't remember whether the men said they were police officers. Mrs. Turner also noted that the detectives never asked permission to enter and that they were polite. Defendant's testimony corroborated his mother's recital of these events.

The next day, August 13, after receiving the pathologist's report, Detective Strotter again interviewed defendant who was still in custody. The detective told Turner that one of the causes of the victim's death was strangulation. Turner then began to cry and said that he had put a towel around the victim's neck while he was in the tub. Defendant stated that he pulled the towel tight but not tightly enough to kill Roy Peterson.

Prior to trial, defendant Turner made a motion for severance pur-

suant to section 114—8 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, sec. 114—8). The motion was denied.

Turner asserts five alleged errors that compel reversal of his conviction. They are: (1) a failure of the trial court to grant a motion for severance which prevented Turner from receiving a fair trial where his defense was antagonistic to the defense of his codefendant, Peterson; (2) the failure of the trial court to quash his arrest and to suppress evidence; (3) the insufficiency of the evidence that defendant's acts caused the death of the victim; (4) the improper instruction to the jury as to lesser-included offenses; and (5) the error of the trial court when an unauthorized communication with a juror was revealed. In a sequential discussion of these alleged errors, this court will supplement the analyses with additional facts.

Defendant's motion for severance is based on the argument that his codefendant's (Peterson's) statement implicating him was incriminating and antagonistic to his defense at trial. He contends that he should be granted a severance because his trial strategy would include the argument that the victim's death was caused by a cerebral hemorrhage inflicted 24 hours before death, while he was only in the apartment for the last eight to 10 hours of the victim's life. The trial court denied the motion to sever stating that defendant Turner could still argue this defense to the jury. Two expert witnesses testified conflictingly at trial as to the cause of death. Both agreed that Roy Peterson had received a blow causing a blood clot in the brain at least 24 hours before his death. Dr. Edmund Donoghue, who performed the autopsy, stated that the death was caused by beating, strangulation, and scalding. The other doctor, Dr. Michael Kaufman, believed the blood clot killed Roy Peterson.

As a general rule, defendants jointly indicted are to be jointly tried unless fairness to one of the defendants requires a separate trial to avoid prejudice. (*People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461.) A defendant who believes he will suffer prejudice as a result of the joinder of his case with that of a codefendant may request severance by pretrial motion. (Ill. Rev. Stat. 1981, ch. 38, par. 114—8.) The motion must demonstrate how defendant is going to be prejudiced by proceeding with a joint trial. Mere apprehension of prejudice is not sufficient. (*People v. Molstad* (1984), 101 Ill. 2d 128, 461 N.E.2d 398.) In ruling on the motion for severance, the trial judge must make a prediction about the likelihood of prejudice at trial, taking into account the papers presented, the arguments of counsel, and any other knowledge of the case developed from the proceedings. The trial court's decision will not be reversed absent an abuse of discretion.

(*People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356.) Recently, the court in *People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969, delineated two situations in which severance motions are usually granted: where a codefendant makes hearsay admissions that implicate the defendant, and where each defendant protests his innocence and condemns the other. In the application of these standards to this case, we cannot hold that the trial judge abused his discretion in denying defendant Turner's motion for severance.

First, this court notes that Turner, in his motion for severance, does not state how he would be injured by the statements of his codefendant nor did he make a request that his statements regarding Roy Peterson's death be redacted. Furthermore, codefendant Peterson made a motion to sever because of Turner's statements implicating her. The trial judge stated that he would grant the Peterson motion unless the State agreed to redact Turner's statement that Peterson stood behind him in the bathroom while he strangled the victim. The State agreed to redact this statement, and the trial judge denied Peterson's motion to sever. Additionally, Peterson testified at trial and was available for cross-examination. Also, both defendants maintained at trial that the death occurred from a hemorrhage inflicted by unknown persons and that defendant's actions were either unintentional or of no medical significance to the victim's death. Furthermore, their respective attorneys cooperated at trial, retaining a single medical expert and adopting each other's post-trial motions.

This is not a case of prejudice where defenses are so antagonistic that a severance is imperative to assure a fair trial because each defendant is protesting his innocence and condemning the other, or an actual and substantial hostility exists between the defendants regarding their defense strategies. (See *People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969.) For the above reasons, defendant's claim that the trial court improperly denied his motion for severance is without merit.

In defendant's second and most compelling argument, he alleges that his arrest was without probable cause and that the trial court erred in overruling his motion to quash his arrest and to suppress the evidence that was the fruit of the unlawful arrest. The fourth amendment of the United States Constitution, as applied to State actions through the fourteenth amendment, inhibits warrantless arrests and seizures with some exceptions.

In this case, the State contends that probable cause to arrest defendant existed prior to his arrest and that entry into his home was consensual. The trial judge, in denying defendant's motion to quash

and suppress, held that there was consensual entry into Turner's home. The judge further ruled that if he were wrong, exigent circumstances existed for the warrantless entry into the apartment of defendant's mother.

Illinois law provides that a warrantless arrest is permissible when a police officer "has reasonable grounds to believe that the person is committing or has committed an offense." (Ill. Rev. Stat. 1981, ch. 38, par. 107—2(c).) This statutory standard is consistent with Federal and State requirements of probable cause. The State maintains that the police had probable cause to arrest defendant without a warrant because of certain facts known to them: the discovery of the bruised and scalded body of the victim; a neighbor's statement that she heard Mrs. Peterson scream, "Get out," followed by the sound of someone leaving the Peterson apartment around 5 a.m.; and Mrs. Peterson's statements to the police that Turner was present in her apartment when Roy Peterson died. The State further contends that Turner was arrested under exigent circumstances when one offender (Peterson) was already in custody and police could reasonably assume that Turner would anticipate arrest and flee. Even without exigent circumstances, the State asserts that entry into the Turner home was with the consent of defendant's mother.

Conversely, defendant contends that neither exigent circumstances nor consensual entry were present in his arrest. Additionally, defendant points out the Detective Strotter testified that Turner was not under arrest in his home. However, the trial judge ruled that defendant was arrested at his home without a warrant.

We agree that Turner was under arrest in his home. Therefore, it is necessary to determine whether probable cause existed for his arrest. Probable cause is defined as knowledge of facts and circumstances sufficient to warrant a person of reasonable caution to believe an offense had been committed and the accused had committed the offense. (*People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605, *cert. denied* (1982), 459 U.S. 841, 74 L. Ed. 2d 85, 103 S. Ct. 92.) Such a determination must not rest on isolated facts but rather on the totality of the circumstances and facts known to the officers. (*People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.) Probability, and not a *prima facie* showing of criminal activity, is the standard of probable cause. *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584.

When the detectives went to Turner's home, they knew that the victim's wife had stated that Turner had helped put her husband in the tub, made certain that he stayed there, helped to remove him

from the tub, and aided her in determining that the victim was dead. The police also had the statement of a neighbor corroborating the fact that someone left the Peterson apartment in the early morning. Contrary to defendant's assertion, probable cause can be established by statements of cooffenders. (See *People v. Calhoun* (1984), 126 Ill. App. 3d 727, 467 N.E.2d 1037.) Furthermore, the findings of a trial court regarding a motion to suppress will not be reversed unless clearly erroneous. (*People v. Clark* (1982), 92 Ill. 2d 96, 440 N.E.2d 869.) In light of the above case law, and the facts in the present case, the trial court properly concluded that there was probable cause to arrest Turner.

■ However, even with probable cause, a warrantless entry into a person's home is justifiable, under our State and Federal constitutions, only if the entry is consensual or if there are exigent circumstances. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371; *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543.) Absent exigent circumstances, a warrantless arrest can be validated by a voluntarily given consent to enter. (*People v. Bean* (1981), 84 Ill. 2d 64, 417 N.E.2d 608, *cert. denied* (1981), 454 U.S. 821, 70 L. Ed. 2d 93, 102 S. Ct. 106.) Voluntariness of consent is determined by the totality of the circumstances. (*People v. Salgado* (1980), 83 Ill. App. 3d 653, 404 N.E.2d 432.) Additionally, it is the trial court's function to determine the credibility of the witnesses and to resolve conflicts in the evidence. (*People v. Clark* (1982), 92 Ill. 2d 96, 440 N.E.2d 869.) The court in *People v. Calhoun* (1984), 126 Ill. App. 3d 727, 467 N.E.2d 1037, considered a similar set of facts. Police officers testified that Calhoun's father gave entry to them. The father denied giving his consent. In affirming the trial court's finding of consensual entry, the appellate court determined that such a holding was not clearly erroneous and must be upheld.

■ In the present case, the trial court heard the witnesses and found the police officers' testimony to be more credible. The record does not indicate that this conclusion is clearly erroneous. Furthermore, whether the defendant's or the police's version is believed, there is no indication that either defendant or his mother refused entry to the officers or were otherwise uncooperative. (See *People v. Rimmer* (1985), 132 Ill. App. 3d 107, 476 N.E.2d 1278.) Thus, the totality of the circumstances in the present case support the trial court's finding that the entry to defendant's home was consensual. Since there was probable cause and consensual entry, Turner's warrantless arrest was valid and there is no need to examine the issue of exigent circumstances. Accordingly, the trial court's denial of defend-

ant's motion to quash his arrest and to suppress the evidence was proper.

■ Defendant's third contention is that the evidence was insufficient to find that any of his acts caused Roy Peterson's death. The uncontradicted testimony reveals that Peterson was found by the police lying face down with blood around his mouth, bruises around his eyes, and severe burns on his body. The medical testimony indicated that Roy Peterson had been beaten and kicked within approximately 24 hours before his death. Both Turner's codefendant and Turner told police that they had beaten Roy the night before his death. Turner did not deny that he aided Peterson in forcing her husband into the hot water and that he made certain Roy stayed in the tub until his eyes rolled back. Turner also told police that when he left the Peterson apartment, he disposed of a bloody pillow that had been placed under the victim's head.

The medical testimony was conflicting as to the ultimate cause of death. Dr. Donoghue stated that a hemorrhage and broken bones found in the victim's neck were consistent with strangulation, although the injuries could have been caused by a blow to that area. Dr. Kaufman disagreed. Dr. Donoghue believed that any one or a combination of beating, strangulation, or scalding could have caused the death. Dr. Kaufman believed the brain blood clot was the sole cause of death although it was possible that Roy might have died at a later time from burn complications. The court notes that on cross-examination of Dr. Kaufman, it was learned that he based his medical conclusions on the mistaken belief that Roy Peterson had voluntarily gotten into the scalding water. Dr. Kaufman concluded that this could have happened only if the victim was in a confused state as a result of the blood clot.

The jury was instructed to consider each defendant's accountability for the acts of the other. Under Illinois law, a defendant may be held liable for a victim's death even if his acts were not the sole or immediate cause of death. (*People v. Love* (1978), 71 Ill. 2d 74, 373 N.E.2d 1312.) However, the State must still prove beyond a reasonable doubt that death did not result from a cause unconnected with defendant. *People v. Kent* (1982), 111 Ill. App. 3d 733, 444 N.E.2d 570.

■ In this case, the jury heard Dr. Donoghue's testimony, supported by the description of the condition of the victim's body, and also heard statements of Turner's given to the police admitting that he hit Roy Peterson, put him into the hot water, put a towel around his neck, and kept Roy in the tub until his eyes rolled up. Additionally,

the jury knew that the conflicting testimony of Dr. Kaufman as to the cause of death was based on erroneous facts. The above facts concerning Turner's conduct reasonably and sufficiently connect defendant's acts to the victim's death. For this reason, we conclude that defendant's argument as to insufficient evidence relating to the cause of death is without merit.

■ Lastly, defendant contends that the trial court erred in failing to give a lesser included manslaughter jury instruction and in failing to order a *voir dire* of the jury, or to conduct an inquiry, when it was revealed that a State's Attorney's administrative aide had an unauthorized communication with a juror. Defendant did not tender a manslaughter instruction to the court nor did he object to the omission in his post-trial motion. He, therefore, has waived the issue for appeal. See *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

■ On the morning of the second day of jury deliberations, an aide asked a juror on the way to breakfast, "When are you going to reconvene?" or "Are you done with your deliberations?" Later, the trial judge raised the issue and advised both sides that they could take appropriate action. No action was taken; defendant's attorney declined the judge's offer to interview the jurors. The judge did conduct an investigation and determined that no prejudice to the defendants had occurred as a result of the communication. A jury verdict will not be set aside where it is apparent that no injury or prejudice has resulted from a communication to the jury. (*People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697.) Since defendant declined an opportunity to question the jurors and since he has shown no resulting prejudice from the communication, we hold that no reversible error has occurred.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P.J., and LORENZ, J., concur.