THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KITCHUL PAIK, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WAYNE SOKOLOWSKI, Defendant-Appellant.

First District (1st Division)   Nos. 1—90—2041, 1—90—2178 cons.

Opinion filed December 30, 1993.

George P. Lynch and Michael T. Wilkie, both of Chicago, for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Gael O'Brien, and Jeanne Lobelson, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

This is a consolidated appeal taken by defendants Kitchul Paik and Wayne Sokolowski. Both defendants, along with two other men, not parties to these appeals, were charged by indictment in October 1988. The indictment charged that on September 7, 1988, the defendants violated the Illinois Controlled Substances Act (Ill. Rev. Stat. 1987, ch. 56$^1$/$_2$, par. 101 *et seq.*) to wit, delivery of a controlled substance; possession with intent to deliver; and calculated criminal drug conspiracy. Prior to trial the indictment charging possession of a controlled substance with intent to deliver was nol-prossed with respect to Sokolowski.

After a two-day joint jury trial, Sokolowski was found guilty of the two remaining counts. Paik was found guilty of all three counts. The trial court then merged all counts into the calculated criminal drug conspiracy count and sentenced defendants to terms of 10 years in the Illinois Department of Corrections.

Prior to trial, Sokolowski filed a motion *in limine*, to preclude use by the State of any evidence of two alleged meetings prior to the sale alleged in the indictment. The State sought admission of a September 2, 1988, meeting between special agents Douglas Mugford and Mark Rasmussen and defendants Sokolowski and Steven Kramer (not a party in this consolidated appeal) in a parking lot at a Dominick's store on North Broadway in Chicago, Illinois. The State contended the September 2, 1988, meeting was a precursor to the September 7, 1988, transaction and part of a calculated criminal drug conspiracy involving all four defendants (Wayne Sokolowski, Kitchul Paik, Steven Kramer and Hugh Anderson). Sokolowski's attorney argued that the facts concerning the September 2, 1988, transaction which involved a nonsale should not be allowed into evidence because, pursuant to the provisions of the criminal drug conspiracy statute, there must be an actual sale of drugs. The trial court denied Sokolowski's motion to bar evidence of the meeting prior to September 7, 1988.

The testimony reveals that Kramer and Agent Rasmussen had agreed to meet at the store to make an alleged drug transaction on September 2, 1988. Upon arriving in the store's parking lot with Agent Mugford at about 2 p.m., Rasmussen parked his car and walked over to the southeast corner of the lot and spoke to Kramer

and Sokolowski. This was the first time Rasmussen had ever met Sokolowski, who informed him that the cocaine was on its way, not to worry, and that Sokolowski would check on its arrival. Rasmussen further testified that he then returned to his vehicle where he remained until he was approached by Kramer approximately 20 minutes later and told that the drugs had arrived. Sokolowski then drove to the location where Kramer and Rasmussen were waiting and parked alongside the agents' car. At this time Anderson, a passenger in Sokolowski's car, told the agents to follow him back to his home, where they could make the cocaine deal.

At this point, Paik arrived at the store, drove up between the two vehicles and inquired if anything was wrong. A conversation ensued among all the parties and allegedly Paik suggested meeting at another location later in the afternoon. When Rasmussen and Mugford did not show at this meeting, Kramer paged Rasmussen and the two men subsequently had a conversation in which they agreed that the deal would be done next week and with Rasmussen's money-man Mugford. Rasmussen then gave Mugford's beeper number to Kramer.

On September 7, 1988, Rasmussen received a phone call from Kramer at about 10 a.m. confirming their meeting at a motel in Morton Grove at 3 p.m. that afternoon. The agents then set up surveillance at the motel and awaited the arrival of defendants. Kramer and Sokolowski arrived at the motel, parked in the rear and entered room 93. Sokolowski was ordered out of the room and paced around the parking lot until Paik and Anderson arrived at which time all three defendants proceeded to room 93.

Once inside the room, Anderson produced a shopping bag and took out a clear plastic bag which contained a rocky substance. Rasmussen then handed Paik $25,000, already counted by Kramer, activated the pre-arrest signal and sent Kramer for the drug-testing kit. At that point, Kramer was arrested by the police officers outside the room and the remaining three men also were arrested. A subsequent search of the vehicle in which Paik and Anderson arrived resulted in the recovery of an amount of cocaine from the front passenger floor.

Forensic scientist Richard Paulas testified that he performed a series of tests on the substances seized. He performed a cobalt thiocyanate test, a wintergreen odor test, a thin layer chromatography test and an infrared spectrum test. He explained that in the first "color" test, a small amount of the substance is placed in a container and a known agent is added resulting in a color reaction which determines whether the test is positive or negative. In this case, the test was positive, indicating the possible presence of cocaine. In the

second "odor" test, a sample of the substance is placed in a glass slide to which a solution of 6% sodium hydroxide or methanol is added. This combination results in evaporation and if an odor of wintergreen is emitted, which resulted in a positive reaction here, cocaine may be present.

In order to perform the chromatography test, Dr. Paulas stated that a small sample of the suspected narcotic is dissolved and a sample of the solution is placed on a commercially prepared glass plate. In addition, drops of known substances called "standards" are also placed on the plate. This placing is called "spotting." The substances are aligned in a horizontal row and the plate is placed in a chamber where either ethanol or methanol is permitted to evaporate causing the "spotted" substances to rise. The plate is removed from the tank and the substances are examined to determine what height they reached. This level is then compared to known standard levels. Additionally, Dr. Paulas testified that standards are used to perform the infrared spectrum test. He stated that in this test a quantity of the unknown substance is extracted to its purest form and then placed inside the spectrophotometer where it is bombarded with various wave lengths of infrared radiation. Different compounds will absorb varying wave lengths of radiation and the resulting pattern becomes imaged upon paper that can be examined. These results are then compared to a known spectra on a graph for the particular drug and where the two graphs meet, one can presume that the two drugs are identical and that identification of the drug has been made. Here, Dr. Paulas testified that the drug tested was determined to be cocaine.

On cross-examination, Dr. Paulas acknowledged that the latter two tests are substantiated when compared to known standards of cocaine. He stated that when a cocaine standard is received by the laboratory, it is generally tested to determine its content; however, he never personally did an independent test on the standard to ensure that its contents were cocaine as labeled.

Counsels for defendants objected to the admission of the narcotics into evidence arguing that Dr. Paulas' testimony revealed that he did not independently test the standard to ensure that it was what it purported to be. The trial court denied the objection stating that the known standard was initially tested and that a sufficient basis was found to support the admission of the evidence. The State rested following the testimony of Dr. Paulas.

■ The first issue is whether the trial court committed error when it allowed the State to introduce evidence of a prior similar occurrence which was uncharged in the indictment and which was outside the bill of particulars. The purpose of a bill of particulars is

to supplement a sufficient indictment in order to inform the accused more fully of the nature of the charge against him and to enable him to present his defense in a better manner. (*People v. Steele* (1984), 124 Ill. App. 3d 761, 765, 464 N.E.2d 788; *People v. Noll* (1982), 109 Ill. App. 3d 306, 308, 440 N.E.2d 335.) The bill of particulars also limits the evidence which the prosecution may introduce, but the date specified in the bill of particulars does not necessarily preclude the State from offering proof that the offense was in fact committed on a slightly different date. (*People v. Steele*, 124 Ill. App. 3d 761, 464 N.E.2d 788.) Where there is a minor inconsistency between the proof elicited at trial and information contained in the bill of particulars, it does not amount to a fatal variance (*People v. Chrisos* (1986), 142 Ill. App. 3d 747, 492 N.E.2d 216), particularly where defendants have not been misled or have not demonstrated any prejudice resulting from the variance. *People v. Martin* (1983), 115 Ill. App. 3d 103, 107, 449 N.E.2d 1039, 1041.

In the case at bar, defendants do not allege that they were misled, were unable to prepare their defense and did not demonstrate prejudice by the alleged variance. Defendants contend that the indictment charged defendants with delivery and calculated criminal drug conspiracy describing the date of the offense as on or about September 7, 1988. Defendants further contend that neither the indictment nor the bill of particulars charged defendants with or alleged that they committed any offense related to any alleged actions occurring on September 2, 1988, yet the trial court allowed into evidence facts about such alleged actions. Defendants maintain that the actions of September 2, 1988, do not rise to the level of criminal conduct. Additionally, Sokolowski maintains that the effect of admitting the facts about the occurrence on September 2, 1988, was to persuade the jury that his mere presence at the scene was in his capacity as a drug dealer. However, he asserts that the record evidence shows that the September 2, 1988, meeting was totally arranged by Kramer and Agent Rasmussen. Furthermore, the cocaine that was in fact sold on September 7, 1988, was purchased exclusively by Paik and Anderson and the details of the meeting as well as the actual transaction were handled by the other three defendants. Sokolowski urges that he was highly prejudiced because the totally unrelated evidence tended to overpersuade the jury. Both defendants argued that there is a reasonable possibility that the incompetent evidence contributed to their convictions.

The State counters that it presented evidence that delivery of cocaine occurred on September 7, 1988, and did not attempt to show defendants delivered cocaine at another time and place. Instead, it

introduced evidence of events on September 2, 1988, to prove a conspiracy, and it is well settled that a conspiracy may be shown by evidence which occurs at other times. For instance, in *People v. Vincent* (1980), 92 Ill. App. 3d 446, 415 N.E.2d 1147, the court allowed into evidence conversations among the conspirators even months before the drug transaction actually took place. The court there stated that the prior conversations could be used to show the defendant's early involvement in the conspiracy which led to the arrangement of a sale with an undercover police officer. The court held that the conversations were connected to the ultimate transaction planned and could be considered acts in furtherance of the conspiracy and as a foundation for the conspiracy which culminated later. *Vincent*, 92 Ill. App. 3d at 455.

In the present case, similarly, the acts of September 2, 1988, were introduced to lay a foundation for the conspiracy and to show that each of the defendants participated in acts in furtherance of the conspiracy. Sokolowski stated that "my friend is the guy with the coke" and then telephoned his "friend." He also guaranteed the quality of the cocaine, encouraged the transaction and suggested a meeting place for that day. Paik drove over to the cars and inquired what was the problem with the deal. He also purportedly suggested a time and place for a meeting between the parties later that afternoon.

Further, Kramer's conversation on September 2, 1988, led to the sale on September 7, 1988, and the attempted sale and ultimate sale involved the same people, the same amount of cocaine, and nearly the same price. Even if there is some variance, minor inconsistencies between the proof and the bill of particulars will not be grounds for reversal if the defendant is not misled and is not prejudiced. (*Chrisos*, 142 Ill. App. 3d at 751.) Here, it appears that the evidence of the September 2, 1988, occurrence was part of the conspiracy alleged by the State in the indictment and bill of particulars. The alleged transaction was attempted with defendants present on September 2, 1988. The same transaction was completed with the same parties present on September 7, 1988. To prove the elements of the calculated criminal drug conspiracy and delivery charges, it was necessary to introduce facts of both the September 2, 1988, and September 7, 1988, incidents. The People submit that only one actual transaction occurred which took five days to complete with all defendants acting in concert on September 2, 1988, and September 7, 1988. Defendants were not misled by the variance, have not demonstrated any prejudice resulting from the variance, and have not demonstrated an inability to prepare their defenses; thus, the evidence was properly admitted.

The next issue is whether there is sufficient evidence to sustain a conviction based upon a conspiracy. Statements made by a conspirator in furtherance of the conspiracy are admissible against other members of the conspiracy as an exception to the hearsay rule. (*People v. Thomas* (1976), 38 Ill. App. 3d 689, 348 N.E.2d 285.) It is not necessary that a conspiracy be alleged in the indictment, and such statements may be admitted before proof of the conspiracy has been given pending the further production by the State of adequate evidence to show the existence of the conspiracy. (*People v. Thomas*, 38 Ill. App. 3d 689, 348 N.E.2d 285; *People v. Stewart* (1974), 24 Ill. App. 3d 605, 614, 321 N.E.2d 450.) To sustain a conviction based upon an accountability theory, the State must establish beyond a reasonable doubt that: (1) the defendant solicited, ordered, abetted, agreed or attempted to aid another in the planning or commission of the offense; (2) the defendant's participation took place before or during the commission of the offense; and (3) the defendant had the concurrent, specific intent to promote or facilitate the commission of the offense. (720 ILCS 5/5—2 (West 1992); *People v. Roppo* (1992), 234 Ill. App. 3d 116, 126, 599 N.E.2d 974.) Mere presence at the scene of a crime and knowledge that a crime is being committed are insufficient to establish guilt. *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 461 N.E.2d 631; *People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520; *People v. MacFarland* (1992), 228 Ill. App. 3d 107, 122, 592 N.E.2d 471.

Sokolowski contends he was nothing more than a witness or bystander to the delivery and not a participant in the transaction. He had no drugs on his person, nor in his vehicle, and he had only a small amount of personal cash. He argues the evidence of his mere presence at the motel, with nothing more, does not establish accountability for the delivery.

The State contends that Sokolowski alone argues he was not proven guilty beyond a reasonable doubt. However, in a motion to adopt, Paik asked the court to allow him to adopt certain of Sokolowski's arguments and authorities presented in the consolidated case brief. When a defendant challenges his conviction based on the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453.

As stated above, the conversation of September 2, 1988, demonstrated the existence of a conspiracy to conduct a drug transaction. Kramer and Sokolowski both talked about "the guy with the coke"

and Sokolowski called him and guaranteed the quality of the substance. Sokolowski also suggested a meeting place to exchange the drugs and the money. There was testimony that Paik approached the parties to find out what was wrong and that he also suggested a second meeting later that day to make the transaction.

Further, following the discussions about the drug deal, both defendants met the agents at the motel on September 7, 1988. Sokolowski and Kramer drove into the parking lot, left and returned just before 1 p.m., the scheduled meeting time. Sokolowski watched the areas outside the room while Kramer spoke with the agent, counted the money and took $500 from the $25,000. Sokolowski then accompanied Paik and Anderson to the motel room after they arrived, and all the defendants were present when the cocaine was exchanged for $24,500.

■ In the present case, the evidence shows that the defendants actively took part in the planning and commission of the sale and delivery of the cocaine. Both defendants participated before and during the commission of the sale and delivery of cocaine and concurrent, specific intent to promote and facilitate the commission of the offense can be implied from the acts of both defendants in furtherance of the sale and delivery of cocaine. Thus, all elements of a conspiracy are present in this case. Based upon this evidence, a rational trier of fact could and did find defendants guilty beyond a reasonable doubt of calculated criminal drug conspiracy.

The next issue is whether the trial court erred in allowing the testimony of an expert witness where the known chemical standard was not independently tested. Defendants contend that Dr. Paulas could not testify on his own personal knowledge when the standard had been received, who had received it and who had tested it to prove that its contents were in fact cocaine. Defendants further contend that no consideration was given to the possibility that the standard could have been contaminated, tampered with, mislabeled or in some other way improperly purported to be something which it was not. Defendants further contend that although the drug was received from a pharmaceutical company and was labeled, it should have been independently tested prior to its use in the series of tests performed.

It is not required that the chemical analyst independently determine for himself the reliability of every instrument being utilized in the examination process or the standard substances used for comparison with the suspected controlled substance. (*People v. Schlig* (1983) 120 Ill. App. 3d 561, 567, 458 N.E.2d 544.) In *People v. Brannon* (1978), 59 Ill. App. 3d 531, 534, 375 N.E.2d 840, the court

concluded that the mechanics of the thin layer chromatography test are compelling circumstantial evidence that the substance sold was LSD, without regard to any direct proof of the identity of the standard as LSD. In *Brannon*, the chemist performed three thin layer chromatography tests. In each test the substance sold as LSD and the standard reacted to the solvent in a positive manner, indicating that the substance sold as LSD and the standard were the same substance. The court reasoned it would seem beyond chance that the standard was not LSD when the substance represented by the defendant as LSD reacted in the same manner in three separate tests with the standard. The two substances were the same in the opinion of the expert. It would be an extraordinary coincidence that by chance some other identical chemical compound composed the substance sold by the defendant as LSD and the standard furnished by the Federal government as LSD would react in the same manner. The court in *Brannon* further stated that the improbability of such an extraordinary circumstance would warrant the jury concluding beyond a reasonable doubt that the substance was LSD. Citing *People v. Nelson* (1967), 82 Ill. App. 2d 236, 225 N.E.2d 820, *aff'd* (1968), 40 Ill. 2d 146, 238 N.E.2d 378, *Brannon* held it was sufficient proof that a certain drug was what it was represented to be, that it was sold by a reputable pharmaceutical company and labeled as the drug in question. The writing on a product's label is competent proof of the contents. *In re T.D.* (1983), 115 Ill. App. 3d 872, 877, 450 N.E.2d 455.

■ In the present case, the record shows that Dr. Paulas testified that he analyzed the substances Agent Mugford had obtained by weighing them and then performing four chemical tests. He performed the cobalt test as a preliminary test for the presence of cocaine, another preliminary test, the wintergreen odor test, and the thin layer and infrared test to determine conclusively that the substances were cocaine. Dr. Paulas testified that the standard came from the United States Pharmacopoeia. As in *Brannon*, we conclude that it would be an extraordinary coincidence that by chance some other identical chemical compound composed of the substance sold by the defendants as cocaine and the standard furnished by the United States Pharmacopoeia would react in the same manner, as the standard, in four separate tests. The improbability of such an extraordinary circumstance would warrant the jury concluding beyond a reasonable doubt that the substance was cocaine. *People v. Budinger* (1992), 230 Ill. App. 3d 279, 290, 291, 595 N.E.2d 28.

The next issue is whether the trial court abused its discretion by failing properly to instruct the jury. It is within the discretion of the trial court to give a non-Illinois Pattern Jury Instruction (IPI). (*People*

*v. Wade* (1989), 185 Ill. App. 3d 898, 905, 542 N.E.2d 58; *People v. Sequoia Books, Inc.* (1986), 145 Ill. App. 3d 1054, 1064, 495 N.E.2d 1292.) It is not error in a criminal case to refuse an instruction which accurately states the law applicable to a case if that principle has been correctly and sufficiently stated by another instruction. *People v. Wheatley* (1989), 183 Ill. App. 3d 590, 607, 539 N.E.2d 276; *People v. Walker* (1988), 177 Ill. App. 3d 743, 532 N.E.2d 447.

Both defendants argue that the trial court abused its discretion by failing properly to instruct the jury. Sokolowski contends that the trial court erred when it refused to give the jury defendant's instruction No. 1 since he is entitled to an instruction on the theory of his defense that his only crime was his presence at the scene. Instruction No. 1 reads:

> "The court instructs the jury that mere knowledge or acquiescence of an illegal act does not constitute a conspiracy."

The State responds that the trial court committed no error by refusing to give instruction No. 1 since it gave defendants' instruction No. 2, which reads:

> "The court instructs the jury that mere presence at the scene of a crime and knowledge that a crime is being committed is insufficient to establish guilt."

■ The State argues that the trial court could have properly found this instruction preferable to the first instruction proffered by defendant. Further, since the court correctly and sufficiently instructed the jury that the mere presence of a defendant did not make him guilty of the crimes, a second instruction was unnecessary.

Defendants also assert that the trial court erred by failing to give defendants' instructions No. 4 and No. 5, which read:

> "No. 4 A person commits the offense of delivery of a controlled substance when he knowingly delivers a controlled substance and the controlled substance weighed more than 900 grams.
>
> No. 5 To sustain the charge of delivery of a controlled substance the controlled substance weighed more than 900 grams, the State must prove the following propositions:
>
> *First:* That the defendant knowingly delivered cocaine, a controlled substance; and
>
> *Second:* That the weight of the controlled substance was more than 900 grams.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

The State counters that the only difference between the proffered instructions and the IPI instructions actually given to the jury were the words "substance containing the controlled substance."

■ Defendants are correct when they state their instructions did not offer the jury the opportunity to find guilt based on possession of a substance that contains a controlled substance. Specifically, their argument is that the legislature intended the punishment for this offense to be based upon the weight of the entire substance that contains cocaine. However, defendants are inaccurate when they urge that the statutes in effect at the time of their case (*i.e.*, Ill. Rev. Stat. 1987, ch. 56½, pars. 1402.2 (repealed), 1401(a)(2)) intended to require measurement of only pure controlled substances. In essence, repealed section 401.2 did not include the words "containing a controlled substance." However, their argument overlooks the fact that section 401(a)(2) in effect at the time clearly provided that the basis for the punishment is the weight of the substance that contains cocaine; thus, it is irrelevant whether or not the cocaine is pure. Further, the legislature's change of the statute (January 1990) indicates its intention that the penalty was for 900 grams of substance containing cocaine. The State urges that in changing section 401.2, the legislature was simply clarifying its prior oversight. Based on the plain reading of section 401(a)(2), the trial court did not abuse its discretion by not giving defendants' instructions No. 4 and No. 5.

■ Instructions No. 6 and No. 7 contained the statutory definition of controlled substance and cocaine. Defendants tendered instructions No. 8, No. 9, No. 10 for delivery of 1 to 15 grams of cocaine. This instruction was not supported by the record. The chemist testified that there were 988 grams of cocaine. Instructions No. 8, No. 9, and No. 10 are not relevant and no prejudice was shown by not giving instructions No. 6 and No. 7.

Sokolowski also argues that the trial court erred when it allowed State's instruction No. 15, which states:

> "Possession may be actual or constructive. A person has actual possession when he has immediate and exclusive control over a thing. A person has constructive possession when he lacks actual possession of a thing but he has both the power and intention to exercise control over a thing either directly or through another person. If two or more persons share the immediate and exclusive control or share the intention and power to exercise the control over a thing, then each person has possession."

He urges that this instruction was patently misleading and prejudicial to him because it imputed to him some possessory interest in the quantity of cocaine that Paik and Anderson had and which they

delivered to the agent. He further argues that since there was no designation of the instruction to any specific count in the indictment or to any specific defendant, it was erroneous.

■ The State maintains that the instruction was properly given and would not confuse the jury since the other instructions clearly informed the jury that Sokolowski was not charged with possession of cocaine. Moreover, the instruction on constructive possession was valid since the jury could be properly advised that Paik did not need solely to possess the controlled substance to be in possession of it. The trial court properly instructed the jury that Sokolowski was not charged with possession of a controlled substance.

The final issue is whether the trial court erred by denying Sokolowski's motion for severance. Defendants jointly indicted are to be jointly tried unless fairness to one of the defendants requires a separate trial to avoid prejudice. (*People v. Turner* (1986), 143 Ill. App. 3d 417, 493 N.E.2d 38; *People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461.) If it appears that a defendant or the State is prejudiced by a joinder of related prosecutions or defendant in a single charge or by joinder of separate charges or defendants for trial the court may order separate trials, grant a severance of defendants, or provide any other relief as justice may require. (725 ILCS 5/114—8 (West 1992).) A defendant's pretrial motion for severance must demonstrate specifically the prejudice complained of; mere apprehensions of prejudice are insufficient. (*People v. Byron* (1987), 116 Ill. 2d 81, 506 N.E.2d 1247; *People v. Bean* (1985), 109 Ill. 2d 80, 92, 485 N.E.2d 349.) The decision to grant a severance is discretionary with the trial judge and will not be reversed absent an abuse of discretion. (*Bean*, 109 Ill. 2d at 93.) In ruling on a motion for severance, the trial judge must make a prediction about the likelihood of prejudice at trial, taking into account the papers presented, the arguments of counsel, and any other knowledge of the case developed from the proceedings. *Turner*, 143 Ill. App. 3d at 421.

Sokolowski asserts that the trial court erred by denying his motion for severance and ordering a separate trial from Paik. Sokolowski contends that the inculpating statement made by Paik about Paik and Anderson purchasing a kilo of cocaine from a Cuban, named Armando, for $19,000 prejudiced him.

■ The record shows that the statement made by Paik did not implicate Sokolowski. In fact it did not even mention him. Both defendants claim they were just present at the drug transaction and that the other persons, namely Kramer and Anderson, were responsible for the sale. Sokolowski has failed to demonstrate prejudice because of the denial of his motion for severance.

The judgment of the trial court is affirmed.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.