No. 1-96-3755

SECOND DIVISION

June 16, 1998

THE PEOPLE OF THE STATE OF ILLINOIS, ) APPEAL FROM

) THE CIRCUIT COURT

Plaintiff-Appellee, ) COOK COUNTY.

)

v. ) No. 93 CR 1352

                              )            

JERMAIL LAKE, ) THE HONORABLE

) JAMES D. EGAN,

Defendant-Appellant.    ) JUDGE PRESIDING. 

JUSTICE COUSINS delivered the opinion of the court: 
 

Defendant Jermail Lake was charged by indictment with two counts of first degree murder in the shooting death of Alvin Gilmore.  Lemont Lake, Allen Duncan and Tineshea Lake were also charged in the indictment.  After a bench trial, defendant Jermail Lake was found guilty of first degree murder and sentenced to 20 years' imprisonment.  

On appeal, defendant contends that: (1) he was denied his constitutional right to a jury trial because he was never advised in open court of his right to a jury trial, nor did he understandingly waive his right or execute a written waiver of his right to a jury trial; (2) he was denied the right to confront witnesses against him by the admission of irrelevant hearsay; and (3) he was denied a fair trial by the improper use of a witness's prior consistent statement.  

BACKGROUND 

Events that began with a street encounter between two women and a slap ended on December 26, 1992, with a hail of bullets being fired at and into a building.  As a result, Alvin Gilmore, who was inside the building, suffered a fatal gunshot wound to the head.  

On December 26, 1992, Lashundia Davis, while on her way to a store by her home, ran into Tineshea Lake, who was with two other women, Rashawn Jackson and Kimberly Manning.  Tineshea had previously dated Lashundia's boyfriend, Orlando Potts.  Rashawn approached Lashundia, said something to her and slapped her across the face.  At this point, Tineshea said "let's get her."  Lashundia then ran home and spoke to her sister and brother, who then accompanied her to Tineshea's home.  At Tineshea's house, Lashundia offered to fight Tineshea but Tineshea refused and Lashundia went home.  On her way home, Lashundia ran into her mother and her boyfriend, Orlando Potts.  After they conversed, Orlando Potts went to Tineshea's house and broke windows in her house.  

Ben Harden testified for the State pursuant to a plea agreement in which first degree murder charges against him were dropped and he received a sentence of 12 years' imprisonment for aggravated discharge of a firearm.  According to Harden's testimony, he was in a car with Lemont Lake when Lemont stopped to make a phone call in response to a page he received on his pager.  Harden testified that Lemont appeared to be angry when he got back in the car and told Harden that "[t]hey was bogus."  Lemont then drove to Allen Duncan's apartment on 55th and Union Streets.  Once inside, Lemont told Allen to "give me that," at which point Allen retrieved a black, 9 millimeter gun along with a loaded clip and handed it to Lemont.  Lemont put the loaded clip into the gun.  

Lemont Lake, Ben Harden and Allen Duncan left Allen's apartment where, soon thereafter, they saw defendant Lake and Shon Scott.  Lemont told defendant and Allen Duncan, "They was bogus for doing that."  Lemont, Ben Harden and Shon Scott then drove to the Lake house at 39th and Prairie, where they met defendant Lake and Shon Scott who had driven separately.  Rashawn Jackson was sweeping up the glass from the window that Orlando Potts had broken.  Harden further testified that Tineshea told Lemont that Orlando had broken the windows because she had called him "out [
sic
] his name."  Harden also testified that Tineshea told the group, which consisted of himself, defendant, Lemont Lake, Shon Scott, and Allen Duncan, that they should go to Orlando's house and "kick his ass," but that they should be careful because someone would be there.  Lemont then pulled out the 9 millimeter gun and said, "don't worry about it."  

Defendant, Lemont Lake, Ben Harden, Shon Scott and Allen Duncan left the apartment and walked northbound on Prairie to Lashundia's house.  Lashundia lived at 3932 S. Prairie, which is a low-rise housing unit.  When they reached a tree about 30 feet away from Orlando's apartment, Lemont told the group to stop, pulled the gun out of his jacket and aimed it toward the apartment.   As Lemont fired the gun he said, "watch me light this place up."  He fired 16 shots at the apartment.  On cross-examination, Harden testified that he could see people in Orlando's apartment before Lemont began shooting.

Ben Harden, Lemont Lake and Allen Duncan ran to Lemont's car and Allen drove them to Lemont's house, where they drank and watched videos.  Defendant and Shon Scott arrived 5 to 10 minutes later.  Defendant then made a phone call in which Ben heard him say, "Is everybody straight?  Is she O.K.?"  Approximately 15 minutes later, the police arrived and arrested everyone.

At trial, Lashundia Davis testified that, at about 6:30 p.m., shortly after Orlando had gone to Tineshea's home to break her windows, she was at home with her mother, siblings, Eric Watkins and her nieces and nephews, including Alvin Gilmore.  Eric Watkins looked out the window and said something that caused Lashundia to look out the window.  When Lashundia looked out the window she saw defendant, Rashawn Jackson, Kimberly Manning, Tineshea, Lemont Lake and Allen Duncan approaching her apartment from the courtyard directly across from her apartment.  Lashundia claimed that the group was within 40 feet of her apartment at one time prior to shooting.  Prior to the shooting, 14 year-old Alvin Gilmore was sitting at the kitchen table near a window.  Testimony established that he died from a gunshot wound to his brain.  

At the conclusion of simultaneous bench and jury trials,  all of the defendants were found guilty of first degree murder.  Defendant was sentenced to 20 years' imprisonment.  Defendant now appeals.

We affirm.

ANALYSIS

I

Defendant first contends that he is entitled to a new trial because he did not waive his right to a jury trial in writing as is required by section 115--1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115--1 (West 1992)), nor did he understandingly and knowingly waive his right to a jury trial in open court.  

Section 115--1 of the Code states that "[a]ll prosecutions *** shall be tried by the court and a jury unless the defendant waives a jury trial in writing." 725 ILCS 5/115--1 (West 1992).  However, in 
People v. Tooles
, 177 Ill. 2d 462, 464, 687 N.E.2d 48, 49 (1997), the Illinois Supreme Court recently reiterated the well-settled rule that the failure to secure a written jury waiver does not require a new trial where it can be shown that the defendant's waiver was otherwise understandingly made.  
Tooles
, 177 Ill. 2d at 464, 687 N.E.2d at 49; 725 ILCS 5/103-6 (West 1992)
.  Rather, the determination of whether a jury waiver was made understandingly turns on the facts and circumstances of each particular case.  
Tooles
, 177 Ill. 2d at 469, 687 N.E. 2d at 51, citing 
People v. Tye
, 141 Ill. 2d 1, 24, 565 N.E.2d 931 (1990).   This court has held that a defendant has knowingly, understandingly and voluntarily waived his constitutional right to a jury trial when he permits his counsel in his presence and without his objection to waive his right to a jury trial on his behalf, because a defendant is deemed to have acquiesced in, and is bound by, his counsel's actions.  
People v. Asselborn
, 278 Ill. App. 3d 960, 962-63, 664 N.E.2d 110 (1996).  

In 
People v. Asselborn
, 278 Ill. App. 3d 960, 664 N.E.2d 110, the following colloquy occurred:

"THE COURT: Have a seat.  Jury waiver.  Bench or jury?

MR. LEVIN [Defense counsel]: It will be a bench your Honor."  
Asselborn
, 278 Ill. App. 3d at 962.

We concluded that the defendant in that case properly waived his right to a jury trial in open court because he was present during the colloquy and failed to object to his counsel's actions.  
Asselborn
, 278 Ill. App. 3d at 962-63.  

Defendant argues that 
Tooles
 supersedes 
Asselborn
 and requires that the trial court question the defendant in order to ensure that his jury waiver is understandingly made.  In 
Tooles
, the supreme court reviewed the trial records of three defendants, Tyreese Tooles, William Farmer and Demarco Gray, in order to ascertain whether each defendant had understandingly waived his right to a jury trial.  In each trial, the respective trial courts spoke directly to the defendants.  Defendants Tooles and Gray were asked whether they understood the difference between a bench and jury trial. 
Tooles
, 177 Ill. 2d at 469, 472, 687 N.E.2d at 52, 53.  Tooles was asked whether his desire to waive his right to a jury trial was the product of any promises or threats.  
Tooles
, 177 Ill. 2d at 469, 687 N.E.2d at 52.   Furthermore, both Tooles and Farmer were told that their right to a jury trial was a constitutional right.  
Tooles
, 177 Ill. 2d at 469, 687 N.E.2d at 52.   It was explained to defendants Farmer and Gray that waiving their right to a jury trial would result in a judge, without a jury, deciding the case.  
Tooles
, 177 Ill. 2d at 469-72, 687 N.E.2d at 52-53.   In light of these facts, the supreme court concluded that all the defendants had understandingly waived their right to a jury trial.   

In the case 
sub
 
judice
, defendant argues that, under 
Tooles
, a trial court is now required to follow the factors mentioned in 
Tooles
, 
i.e.
, inform the defendant that his right to a jury trial is a constitutional right, explain the difference between a bench and jury trial and question whether the defendant's desire to waive his right to a jury trial is the product of any promises or threats in order to ensure that a defendant's jury waiver is understandingly made.   We believe defendant misinterprets 
Tooles
.  While the better practice for a trial court is to make full inquiry and admonishments and also obtain a written jury waiver, a new trial is not necessary even though a court failed either to speak to the defendant and or obtain a written jury waiver where it can be shown that the defendant's waiver was otherwise understandingly made.   
Tooles
, 177 Ill. 2d at 464, 687 N.E.2d at 49; 
Asselborn
, 278 Ill. App. 3d at 963.  In our view, 
Tooles
 does not require specific admonishments or advice to a defendant.  To the contrary, citing 
People v. Smith
, 106 Ill. 2d 327, 478 N.E.2d 357 (1985), the 
Tooles
 court specifically stated:

"[W]e review each defendant's trial record to determine whether he understandingly waived his right to a jury. In doing so we observe that, while the circuit court must insure that a defendant's jury waiver is understandingly made, 
no set admonition or advice is required before an effective waiver of that right may be made
.  
Smith
, 106 Ill. 2d at 334. The determination whether a jury waiver was made understandingly instead turns on the facts and circumstances of each particular case.  
People v. Tye
, 141 Ill. 2d 1, 24 (1990)." (Emphasis added.) 
Tooles
, 177 Ill. 2d at 469, 687 N.E.2d at 51.

People v. Smith
, 106 Ill. 2d  327, 478 N.E.2d 357 (1985), in turn, cites 
People v. Frey
, 103 Ill. 2d 327, 469 N.E.2d 195 (1984), for the proposition that no set admonition or advice is required before an effective jury waiver may be made.  
Smith
, 106 Ill. 2d at 334.

In 
People v. Frey
, 103 Ill. 2d 327, 469 N.E.2d 195, the record on appeal included only the record of the bench trial and did not include a  record of the discussions between the court and defense counsel prior to trial. 
Frey
, 103 Ill. 2d at 330.  The appellate court ordered a new trial because it did not believe the record supported a finding that the defendant had implicitly or explicitly waived a jury trial.  
Frey
, 103 Ill. 2d at 331-32.  The Illinois Supreme Court disagreed and concluded that the defendant's jury waiver was valid because the defendant was present on occasions when the matter of a bench trial was discussed.  
Frey
, 103 Ill. 2d at 333.  The supreme court concluded that the orders that had been filed prior to trial that were included in the record indicated that a bench trial had been set and therefore reflected defense counsel's willingness to try the case before the court.  
Frey
, 103 Ill. 2d at 332-33.  The supreme court further noted that, on the day of trial, a colloquy took place between the court and defendant in which the only reference made to a bench trial was the trial court's comments on the matter.  The trial court stated: "[t]hese causes were set today for purposes of bench trial and the issues presented by all three counts pending against this defendant.  Are the People ready for trial at this time?" (Emphasis omitted.)  
Frey
, 103 Ill. 2d at 331.  The supreme court pointed out that, typically, an accused speaks and acts through his attorney and, therefore, effect is given to jury waivers made by defense counsel in defendant's presence where the defendant gives no indication of any objection to the court.  
Frey
, 103 Ill. 2d at 332.  In this way, the supreme court concluded, the accused will not be permitted "to gamble on the outcome before the judge without a jury and then if dissatisfied make a belated demand for a jury."  
Frey
, 103 Ill. 2d at 333.

Thus, after a careful reading of 
Tooles
 and its reliance of 
Smith
 and 
Frey
, one cannot conclude that 
Tooles
 supersedes 
Asselborn
.  Rather, the two cases consistently set forth the rule that, in the absence of a written jury waiver, or specific admonishment or advice by the trial court, a defendant has nevertheless knowingly, understandingly and voluntarily waived his constitutional right to a jury trial in open court when he permits his counsel in his presence and without his objection to waive his right to a jury trial on his behalf.  

In the instant case, the record reflects that defendant was present in court on December 14, 1995, and February 13, 1996, when his trial counsel indicated that defendant would seek a bench trial.  On December 14, 1995, the following colloquy took place:

"THE CLERK: Shon Scott, Lamonte [
sic
] Lake, Allen Duncan, Jamail [
sic
] Lake, Ben Harden, Tinesha [
sic
] Lake.

THE COURT: All right.

MR. BRENNOCK [Public Defender]: Mike Brennock from the P.D.'s Multiple Unit on behalf of Mr. Harden who is in open court.  Miss Miller represents Jamail [
sic
] Lake apparently.

THE COURT: As to Jamail [
sic
] Lake, is there an indication, did you say bench trial?

JAMES FRYMAN [Public defender]: She indicated that it would be a bench trial.

* * *

THE COURT: As to Jamail [
sic
] Lake, 2/13 for bench trial.  Mr. Lake is 2/13."

On February 13, 1996, the following colloquy occurred:

"THE COURT: Miss Miller, which is the one you represent?

MS. MILLER [Public defender]: Jermail Lake, bench trial."

The facts presented here are analogous to the facts in 
Asselborn
 and 
Frey
.  Here, on more than one occasion, defense counsel represented on defendant's behalf and in defendant's presence that defendant would seek a bench trial.  Accordingly, under 
Asselborn
, we cannot conclude that defendant failed to properly waive his right to a jury trial.

II

Defendant further contends that he was denied the right to confront witnesses against him when inadmissible hearsay was admitted.   At trial, Ben Harden testified that he and Lemont Lake went to Allen Duncan's apartment where Lemont told Duncan "give me that."  Duncan responded by giving Lemont a black, 9 millimeter gun and a loaded clip.  Defendant contends that this testimony was inadmissible against him because he was not present during this conversation and nothing in the record indicates that he knew about the conversation or events which preceded it.  Defendant further contends that he was denied the right to confront either Lemont Lake or Allen Duncan.  

It is well-settled law that statements made by a co-conspirator in furtherance of the conspiracy are admissible against other members of the conspiracy as an exception to the hearsay rule.  
People v. Paik
, 257 Ill. App. 3d 620, 627, 628 N.E.2d 1140 (1993); 
People v. Gray
, 85 Ill. App. 3d 726, 729, 410 N.E.2d 493 (1980).   It is not necessary that a conspiracy be alleged in the indictment and such statements may be admitted before proof of the conspiracy has been given pending the further production by the State of adequate evidence to show the existence of the conspiracy.  
Paik
, 257 Ill. App. 3d at 627.  To establish a 
prima
 
facie
 case of the existence of a conspiracy, the State must prove that two or more persons intended to commit a crime, that they engaged in a common plan to accomplish the criminal goal and that an act or acts were done by one or more of them in furtherance of the conspiracy.  
People v. Melgoza
, 231 Ill. App. 3d 510, 521, 595 N.E.2d 1261 (1992). 

The facts in 
People v. Davis
, 46 Ill. 2d 554, 559-60, 264 N.E.2d 140 (1970), are similar to the facts in the instant case.  In 
Davis
, the defendant argued that evidence of his codefendant's conversation with another party regarding a potential purchase of narcotics from defendant was erroneously admitted because the conversation took place prior to his arrival at the scene.  Defendant joined the group after the conversation where he participated in the narcotics purchase.  
Davis
, 46 Ill. 2d at 556-57.   The Illinois Supreme Court held that the codefendant's statement was properly admitted because it reflected a continuing joint endeavor of the defendants to sell narcotics and was, therefore, made in furtherance of their conspiracy to sell narcotics.  
Davis
, 46 Ill. 2d at 558.  Furthermore, the defendant in 
Davis
 argued, as does defendant Lake, that he was denied his right to confront witnesses pursuant to 
Bruton v. United States
, 391 U.S. 123, 20 L. Ed. 476, 88 S. Ct. 1620 (1968).  
Davis
, 46 Ill. 2d at 557.   However, the supreme court found 
Bruton
 distinguishable as that case bars the admission of hearsay by a codefendant under the sixth amendment when there is no recognized exception to the hearsay rule.  
Davis
, 46 Ill. 2d at 558.  The admission of a co-conspirator's statement against a co-conspirator is an exception to the hearsay rule and is therefore not barred by the rule in 
Bruton
.  
Davis
, 46 Ill. 2d at 558-59.

In the instant case, the State established a 
prima
 
facie
 case that the defendants conspired to commit a battery against Orlando Potts.  Testimony at trial established that, when Lemont Lake found out that Orlando Potts had broken the windows at the Lake residence, he and Ben Harden went to Allen Duncan's house, where Allen gave Lemont a gun.  Thereafter, the group returned to the Lake apartment, where Tineshea told them that they should "kick [Orlando's] ass."  Subsequently, the group left the Lake apartment with the common goal to hurt Orlando Potts in retaliation for the windows he broke. Shortly thereafter, a barrage of bullets was fired at the apartment and Alvin Gilmore was shot through a window while inside the apartment.  Thus, we believe it reasonably can be inferred from these facts and circumstances that a conspiracy to hurt Orlando Potts existed.  Accordingly, Lemont Lake's statement to Allen Duncan was properly admitted because it reflected the defendant's common design or plan to hurt Orlando Potts. 

III

Defendant further contends that the State should not have been permitted to read Ben Harden's statement to the jury because the statement was consistent with his trial testimony.  Defendant has waived review of this issue because he failed to include this issue in his posttrial motion.  See 
People v. Enoch
, 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124 (1988).  However, assuming 
arguendo
 that this issue was not waived, we believe defendant's argument is meritless.  

Proof of a prior consistent statement by a witness is generally inadmissible unless it is made to rebut a charge or inference of recent fabrication or motive to testify falsely, so long as the prior statement is made before the alleged motive to fabricate existed.  
People v. Jones
, 293 Ill. App. 3d 119, 126, 687 N.E.2d 1128 (1997), citing 
People v. Ashford
, 121 Ill. 2d 55, 71, 520 N.E.2d 332 (1988).  Thus, in analyzing the issue as to whether the trial court erred by admitting a witness' prior consistent statement into evidence, it is necessary to analyze whether the witness is alleged to have had the same motive to fabricate at the time she made the prior consistent statement as she did at trial; the prior consistent statement rebuts the inference of fabrication only if the motive to fabricate is shown not to exist at the time of the prior consistent statement. 
Jones
, 293 Ill. App. 3d at 126.  

Defendant argues that Ben Harden's testimony indicates that he was motivated to lie at the time he made his statement to the police because the police told him that they would help him if he told the truth.  However, our reading of the record indicates otherwise. At trial, Ben Harden testified as follows:

"Q. In fact, you only changed your mind because you were told by an Assistant State's Attorney, DiMaggio, and by a police officer [
sic
] by the name of Argenbright and Glynn that if you agreed to cooperate with them, that they would help you, isn't that correct?

A. Yeah, they said that.

Q. And in fact, that is the only reason that you chose to make statements which they wanted you to relative to the events which took place earlier on that evening, is that correct?

A. No, that is not true.

* * * 

"Q. And you're telling the Court and the ladies and gentlemen of the jury that at no time did any police officer make any statement to you about leniency if you cooperated with them, is that correct?

A. That is correct."

In our view, Harden's testimony indicates that he did not have a reason to lie to the police at the time he made his statement.  He testified that he did not give a statement to the police in exchange for leniency or cooperation.  Since Harden's  testimony indicates that he had no reason to fabricate at the time he made the statement, which he made several months before the trial of this case, the prior consistent statement was properly admitted.  

For the reasons cited herein, the judgment of the circuit court of Cook County is affirmed.  As part of our judgment, we grant the State's request and assess defendant $150 as costs for this appeal.

Affirmed. 

McNULTY, P.J., concurs.

TULLY, J., dissents.

JUSTICE TULLY, dissenting:

Although I concur with the majority's recitation of the law, I must respectfully dissent to the application of the law to this particular case.  

As the majority correctly noted, in the absence of a written jury waiver, or specific admonishment or advice by the trial court, a defendant has nevertheless knowingly, understandingly and voluntarily waived his constitutional right to a jury trial in open court when he permits his counsel in his presence and without his objection to waive his right to a jury trial on his behalf.  See 
People v. Tooles
, 177 Ill. 2d 462, 687 N.E.2d 48 (1997); 
People v. Asselborn
, 278 Ill. App. 3d 960, 664 N.E.2d 110 (1996).  I disagree, however, with the majority's conclusion that defendant properly waived his right to a jury trial because defense counsel represented on defendant's behalf and in defendant's presence, that defendant would seek a bench trial.  

On December 14, 1995, the following colloquy transpired:

"THE COURT:  As to Jamail [
sic
] Lake, is there an indication, did you say bench trial?

JAMES FRYMAN  [Public defender]:  She indicated that it would be a bench trial.

THE COURT:  As to Jamail [
sic
] Lake, 2/13 for bench trial.  Mr.  Lake is 2/13."

On February 13, 1996, the following colloquy occurred:

"THE COURT:  Miss Miller, which is the one you represent?

MS. MILLER  [Public defender]:  Jermail Lake, bench trial."  

The crux of the analysis turns on whether defendant understandingly and knowingly waived his right to a jury trial in open court.  Under the facts and circumstances of this particular case, I do not believe defendant properly waived his right to a jury trial. 

The majority asserts that this case is analogous to 
Asselborn
.  In that case, however, the trial court explicitly used the phrase jury waiver and asked defense counsel whether it would be a bench or jury trial.  
Asselborn
, 278 Ill. App. 3d at 962.  Conversely, in the instant case, defense counsel merely indicated on two occasions in defendant's presence that defendant would seek a bench trial.  I cannot conclude that this fact by itself shows that defendant understandingly and knowingly waived his right to a jury trial.

In light of the foregoing, I would reverse the judgment and remand this cause for further proceedings consistent with this view.