No. 1-96-2046

November 14, 1997

THE PEOPLE OF THE STATE OF ILLINOIS )  Appeal from the

)  Circuit Court of

Plaintiff-Appellee, )  Cook County.

)

v. )

)

ROBERT JONES, )  Honorable

)  Fred G. Suria, Jr.,

Defendant-Appellant. )  Judge Presiding.

JUSTICE ZWICK delivered the opinion of the court:

Following a jury trial defendant, Robert Jones, was found guilty of the armed robbery of Elaine Ramos and sentenced to serve a term of natural life imprisonment as a habitual offender pursuant to the provisions of the Uniform Code of Corrections, 720 ILCS 5/3-3(b)(1). He now appeals, alleging that (1) the State improperly bolstered Ramos's identification with so-called "non-identification testimony," (2) the State was erroneously permitted to elicit testimony regarding Ramos's excited reaction in viewing the defendant in a police lineup, (3) testimony that defendant had to be "writted out" of jail before he could be brought to the police lineup was unfairly prejudicial, (4) one of the State's witnesses was permitted to testify to a prior consistent statement in which Ramos told him, approximately a month after the incident, that a gun had been used in the robbery, and (5) defendant was denied to a jury instruction on the offense of aggravated robbery. For the following reasons, we reverse and remand the case for further proceedings.

At trial, Elaine Ramos testified that she was walking to her car on March 1, 1995, at approximately 8 p.m. after shopping at the Target store located at 2656 North Elston. As she was putting her shopping bags into her car, she heard a car stop suddenly behind her. She turned and saw the defendant get out and run toward her with a gun in his hand. Although defendant had partially covered the gun with a towel, Ramos could see its barrel. Defendant walked up to Ramos and pointed the gun at her stomach. She testified that the defendant was right in her face and that the parking lot was "very, very well lit."

Ramos opened her wallet and gave defendant about $70. After she told defendant that she had no more money, defendant walked to his car and drove away. As he drove away, she looked at his license plate, then ran into Target and told the security people, "I've been robbed with a gun." She kept repeating the license plate number over and over.

When police arrived at the Target store, Ramos described the offender as an African-American male, light skin, at least six feet tall, about 160 pounds, with marks on his face and hair growth, wearing a tan jacket and dark pants. Ramos then gave a partial license plate number, "L-W-J." Ms. Ramos also told the police that she had seen the barrel of the gun.

 A couple of days later, Ramos received a phone call from Detective Fernando

Montilla. He took her to the Area 5 police station where Ramos looked at books of photos, but did not recognize the person who had robbed her. She told the detective that she had a clear image of the person and did not want to be confused by looking at more pictures.

On April 3, 1995, Ramos again went to Area 5, this time to view a lineup. When the curtains were opened, she immediately recognized defendant stating, "It was just instant recognition. He was just right in front of me, like again. And I was just, it was like seeing him. I just moved back, I started crying." Ramos told the detective conducting the lineup, "That's him, that's him." She was so upset to see defendant again that she "almost passed out." 

On cross-examination, Ramos insisted that she had seen a gun during the robbery, stating that she could see both its barrel and defendant's hand around its handle. When asked if the gun was a revolver or a pistol, she stated that she did not know guns. She denied telling police that she saw a "possible handgun barrel," insisting that she told them she had been robbed with a gun. 

Officer John Nowik testified that he received a radio call on March 1, 1995, directing him to meet a robbery victim at the Target store at 2656 North Elston. At the scene, Ms. Ramos told him that the offender was a black male, 6 feet tall and weighed about 170 pounds. He was in his 30s. He had dark pants, a tan jacket and wore gym shoes. His face had pock marks. 

On cross-examination, Officer Nowik admitted that his police report of the incident indicated that the offender was "about 30," not "in his 30s." He also stated that the report did not describe a gun, but only indicated that the perpetrator had displayed "an unknown possible handgun barrel." Officer Nowik stated that Ramos never described the handle of the weapon.

Detective Montilla, a Chicago police robbery specialist, testified that he had been assigned to the robbery of Elaine Ramos on March 1, 1995. In response to prosecutors questioning of when he had first come into contact with the defendant, Montilla stated that he had "writted him out --," and was interrupted by defendant's objection. The trial court instructed Montilla just to answer the question asked of him and Montilla then explained that he first came in contact with the defendant on April 3, 1995, when he arranged a police lineup for Ramos. He further testified that when he opened the curtain to show Ramos the lineup, she got very nervous and almost passed out. She subsequently identified the defendant as the offender. Montilla also stated, over defendant's objection, that Ramos told him a gun had been used in the robbery. 

On cross-examination, Detective Montilla stated that defendant's height was 6 feet, 3 inches and that he was 43 years old. Montilla noted that his arrest report revealed that the defendant had a scar on his left cheek. 

After hearing closing arguments, the jury found defendant guilty of armed robbery. 

I.

Defendant first argues that the trial court committed reversible error in failing to sustain his objection with regard to Ramos's "non-identification testimony." Specifically, defendant complains that Ramos's testimony that she looked unsuccessfully through mug books at police headquarters several days after the robbery was improper and prejudicial. The State concedes that this questioning violated the supreme court's holding in 
People v. Hayes
, 139 Ill. 2d 89, 138, 564 N.E.2d 803 (1990), but argues that the error is harmless.

In 
Hayes
, the court found that the introduction of certain testimony, i.e., testimony that the prosecution's witnesses had failed to identify the perpetrator after being driven around the crime scene and also upon viewing police photographs, was irrelevant and improper, in part, because of its tendency to bolster the witnesses' subsequent identification of the defendant. 
Hayes
, 139 Ill. 2d at 138-39. The court determined, however, despite the error, the "overwhelming evidence" of defendant's guilt prevented the case from having to be reversed and remanded. 
Hayes
, 139 Ill. 2d at 139.

In drawing an analogy to 
Hayes
, the State argues that there was "ample testimony" establishing that Ramos identified defendant after seeing him at the scene, and points out that the identification by Ramos was made after she observed him in "well lit circumstances." We do not share the State's view of the quality of evidence in this case. Rather than being overwhelming, we find the proof of guilt to be delicately balanced.

Defendant was convicted by the uncorroborated testimony of a single eyewitness who picked defendant out of a line-up more than a month after the offense occurred. This single-finger identification was made by a woman who had never seen the offender before the robbery and who, by her own account, was terrified throughout the ordeal. There was not a scintilla of evidence corroborating the identification. In contrast, no less than 6 witnesses identified the defendant in 
Hayes
 as the offender. 
Hayes
, 139 Ill. 2d at 139. Moreover, Ramos's description of the offender, made immediately after the offense, gave the age of the offender as 30 or being in his 30's when, in fact, defendant was 43-years old. Evidence also established that the defendant had a scar on his left cheek, a scar which Ramos did not observe on the perpetrator at the time of the robbery. While these facts would not be sufficient to prevail on a claim of reasonable doubt, we agree with defendant's argument that the identification testimony presented by the State is far from the type of evidence needed to render harmless the conceded error which bolstered Ramos's identification. This is not altered by the fact that the witness testified that she was sure of her identification or that the crime scene was well lit. Accordingly, defendant's conviction must be vacated and the case remanded for a new trial.

We now turn to a discussion of the remaining issues which may present questions of law for the trial court on remand. 

II.

Defendant argues that it was error for the trial court to allow testimony from both Ramos and detective Montilla, over objection, as to how Ramos reacted upon seeing the defendant at the police lineup. Defendant argues, "[t]he reliability of the identification is not enhanced by evidence that, upon seeing defendant in the line-up, [Ramos] cried, trembled, shouted `Oh my god' in disbelief, or felt as though she were reliving the crime." 

In describing her identification of the defendant, Ramos testified:

"They opened up the curtain. I looked in the room and I just --- I mean I immediately saw him. It was just instant recognition. He was just right in front of me, like again. And I was just, it was like seeing him. I just moved back, I started crying. 

The officer said, `Do you recognize him?'

I said, `Oh my god, I can't believe this. Oh, my god.' 

* * * * *

I said, `That's him, that's him.' My hand was shaking and he said, `What number is he?' They said, `Is it 1, 2, 3, 4?'

I said, `It is No. 3. It is No. 3.'"

Regarding the same events, Detective Montilla testified:

"Mrs. Ramos got very nervous, almost passed out, and pointed out Offender No. 3." 

We find this testimony was properly admitted. 

The general rule is that a witness may not testify as to statements made out of court for the purpose of corroborating her testimony given at the trial relative to the same subject. 
People v. Clark
, 52 Ill. 2d 374, 388-90, 288 N.E.2d 363 (1972). This rule is held to apply with equal force where a third person seeks to testify concerning the prior consistent statements. 
People v. Fuelner
, 104 Ill. App. 3d 340, 351, 432 N.E.2d 986 (1982). An exception to the rule is recognized, however, where the out-of-court statement is one of identification. A prior identification is admissible because it refutes the possibility that an in court identification is based solely on the suggestiveness of the trial setting. 
People v. Rogers
, 81 Ill. 2d 571, 411 N.E.2d 223 (1980). To this end, section 115-12 of the Code of Criminal Procedure states that testimony concerning a prior identification is not prohibited by the hearsay rule where, (1) the declarant testifies at the trial or hearing, (2) the declarant is subject to cross-examination concerning the statement and (3) the statement is one of identification of a person made after perceiving him. 725 ILCS 5/115-12 (West 1996).

We simply disagree with the premise of defendant's argument on this issue. When the fact finder is presented with testimony concerning a prior identification, the identification is admitted to corroborate the witness's in-court identification pursuant to section 115-12, and the reliability of that identification is necessarily put into question. Many factors must be considered in assessing the reliability of the prior identification, including the witness's level of certainty as demonstrated at the time of the lineup confrontation. See 
Cleary and Graham's Handbook of Illinois Evidence
 (5th Ed. 1990) pp. 439-40, § 611.17. Therefore, we conclude that the trial court properly allowed the challenged testimony. 

III.

Defendant next contends that the trial court improperly allowed the introduction of "other crimes" evidence. Before trial, defense counsel moved 
in
 
limine
 to bar testimony that he was "writted out" from the Cook County Jail for the lineup. Defendant took the position that this testimony should not be admitted because it tended to inform the jury that he was in custody for unrelated offenses. The prosecutor informed the court he had anticipated the problem and had instructed the detectives accordingly. Nonetheless, when Detective Montilla was asked by the prosecution the date in which he had first come into contact with the defendant, the officer began his answer by saying that he had "writted him out --." The court instructed the officer simply to answer the question that had been asked of him. 

The State argues that the issue has been waived because defendant did not include the issue in his post-trial motion. 
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988). The State also argues that the term "writted out" is too obscure a reference to have been prejudicial to the defendant. Regardless of the State's arguments, however, we agree with defendant that the introduction of such testimony presents serious concerns regarding defendant's right to a fair trial. Given our decision to remand the case on other grounds, we need not comment on the ultimate question of whether defendant was unfairly prejudiced by the reference. We simply note our confidence that prosecutors and the trial court will take whatever precautions are necessary to prevent the same error from recurring on remand.

IV

Defendant next contends that Officer Nowik should not have been permitted to testify that on April 3, 1995, approximately one month after the robbery, Elaine Ramos told him that she had been robbed by a man using a gun. Defendant argues that such a "prior consistent statement" is not admissible. We agree.

The State concedes that proof of a prior consistent statement by a witness are generally inadmissible unless they are made to rebut a charge or inference of recent fabrication or motive to testify falsely, so long as the prior statement is made before the alleged motive to fabricate existed. 
People v. Ashford
, 121 Ill. 2d 55, 71, 520 N.E.2d 332 (1988). Thus, in analyzing the issue as to whether the trial court erred by admitting a witness' prior consistent statement into evidence, it is necessary to analyze whether the witness is alleged to have had the same motive to fabricate at the time she made the prior consistent statement as she did at trial. See 
People v. Grisset
, 288 Ill. App. 3d 620, 626-27, 681 N.E.2d 1010 (1997). The prior consistent statement rebuts the inference of fabrication only if the motive to fabricate is shown 
not
 to exist at the time of the prior consistent statement. See 
Grisset
, 288 Ill. App. 3d at 626 (rejecting the court's contrary holding in 
People v. Antczak
, 251 Ill. App. 3d 709, 622 N.E.2d 818 (1993)). Under the facts presented, the proper analysis fails to support the admission of the prior consistent statement.

Defense counsel implied by his questioning of Ramos and Officer Nowik that Ramos was unsure of the existence of a gun at the time she was interviewed at the scene, on March 1, 1995. This was inconsistent with Ramos's trial testimony in which she insisted that she had always claimed a gun had been used in the robbery. In order for the prior April 3 prior consistent statement to be admitted under such facts, it would have had to have been made 
before
 the interview on March 1, 1995 (as were her statements in the store immediately after the robbery, "I've been robbed with a gun"), not a month afterwards. Ramos's statement to Montilla on April 3, 1995, did not rebut a charge of 
recent
 fabrication because defense counsel never implied that Ramos had developed a motive to fabricate at any particular point in time after her meeting with Montilla.

V.

Finally, defendant argues that the trial court committed reversible error in failing to instruct the jury on the "lesser included offense" of aggravated robbery. We reject defendant's argument, albeit for reasons that differ from those urged to us by the State.

Although no person may be convicted of an offense that he or she has not been charge with committing, a defendant may be convicted of an offense not expressly included in the charging instrument if that offense is a lesser included offense of the crime expressly charged. 
People v. Novak
, 163 Ill. 2d 93, 105, 643 N.E.2d 762 (1994); 
People v. Bryant
, 113 Ill. 2d 497, 499 N.E.2d 413 (1986). A lesser included offense is "established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2-9(a) (West 1996). 

The State agrees with the defendant that aggravated robbery is a lesser included offense of armed robbery, but argues that the trial court was nonetheless justified in not giving an aggravated robbery instruction because the evidence was insufficient to support it. We reject both the position of the State and the defendant on this issue because we conclude that aggravated robbery is 
not
 a lesser included offense to the charge of armed robbery, at least as the State has worded the indictment in this case. The State's concession regarding the existence of a lesser included offense does not control our analysis of the issue because it is our obligation, independent of the parties' arguments, to achieve both a just result and to maintain a sound and uniform body of precedent 
Wozniak v. Segal
, 56 Ill. 2d 457, 460, 308 N.E.2d 611 (1974); 
People v. Hanson
, 273 Ill. App. 3d 332, 340, 652 N.E.2d 824 (1995). Whether a charged offense encompasses a lesser included offense is a matter of law which we review 
de
 
novo
. 
People v. Landwer
, 166 Ill. 2d 475, 486, 655 N.E.2d 848 (1995). 

As background, it is helpful to recognize the significant differences which exist between the crimes of armed robbery and aggravated robbery. A defendant commits the offense of armed robbery, a Class X offense, when he (1) takes property from the victim; (2) by the use of force or by threatening the imminent use of force; and (3) 
does so while armed with a 
dangerous weapon
. 720 ILCS 5/18-2 (West 1996). A defendant commits aggravated robbery, a less-serious Class 1 offense, when he (1) takes property from the victim; (2) by the use of force or by threatening the imminent use of force; and (3) 
while indicating verbally or otherwise to the victim that he is armed with a firearm
. 720 ILCS 5/18-5 (West 1996). 

The first two elements of the offenses of armed robbery and aggravated robbery are identical, but the third elements are quite distinct. The offense of armed robbery requires the defendant to be armed with a "dangerous weapon." In contrast, the offense of aggravated robbery requires that the defendant state or imply to the victim that he has a "firearm." Moreover, the defendant need not threaten the victim with the weapon for armed robbery to exist. Indeed, the victim need not even realize that the defendant has a weapon, so long as the State can show the victim was otherwise forced or threatened with imminent force to turn over property. 

To illustrate the differing requirements of the two offenses, we note that a defendant can be guilty of committing the more-serious offense of armed robbery and yet not be guilty of the less-serious offense of aggravated robbery. Such is the case when the defendant threatens his victim with a knife (because a knife is a "dangerous weapon," but not a "firearm"), or when he carries a handgun, but does not show it or tell his victim that he has it (because the armed robbery statute only requires defendant to be "armed" with a weapon, and because the aggravated robbery statute requires the defendant to state or imply to the victim that he has a firearm). Alternatively, a defendant can be guilty of the less-serious offense of aggravated robbery and not the more-serious offense of armed robbery, as when he falsely says he has a gun (because armed robbery requires the defendant to be actually "armed with a dangerous weapon"). A final scenario is that a defendant can be guilty of committing both crimes in the same criminal act, as when he threatens the victim with a real gun (because a gun is both a "dangerous weapon" and a "firearm"), or when he possesses a dangerous weapon that is not a firearm, but tells his victim that he has a firearm. 

In considering whether a crime is a lesser included offense of another, Illinois follows a "charging instrument" analysis. 
Novak
, 163 Ill. 2d at 112. Under this approach, an offense is determined to be a lesser included offense not by analyzing the statutory elements of the crimes involved and the possible theoretical ways in which charged offense and alleged lesser included offense could be committed, but rather, by comparing the charging instrument to the alleged lesser-included offense to see whether the charging instrument sufficiently describes the "foundation" or "main outline" of that offense. 
Novak
, 163 Ill. 2d at 107, 114. Thus, in 
Novak
, the court concluded that the offense of aggravated criminal sexual abuse was not a lesser included offense of the offense of aggravated criminal sexual assault because the indictment charging the defendant with sexual assault indicated only that the defendant had committed an act of penetration against the victim, failing to state that he had done so "for the purpose of sexual gratification." The court concluded that the failure of the indictment to allege this element of the charge of aggravated criminal sexual abuse resulted in the indictment failing to set out the "foundation" or "main outline" of the abuse charge. 
Novak
, 163 Ill. 2d at 114. Three dissenting justices took the position that the missing element could be reasonably inferred from the charging instrument which had alleged penetration (
Novak
, 163 Ill. 2d at 121-25 (Nickles, J., dissenting)), but the court implicitly rejected this argument in affirming.

The indictment in this case alleged armed robbery as follows:

"Robert Jones committed the offense of armed robbery in that he, by the use of force or by threatening the imminent use of force while armed with a dangerous weapon, to wit: a handgun[,] took United States currency from the person or presence of Elaine Ramos ***." 

Although this indictment does allege the use of a firearm, an allegation sufficient to meet part of the third element of the aggravated robbery statute, it clearly does not allege that the gun was ever displayed to Ramos or that the defendant implied to Ramos that he possessed a gun. We find that such allegations are a necessary "foundation" or "main element" of the aggravated robbery charge and, as in 
Novak
, the missing element cannot be inferred. Accordingly, it was proper for the trial court to refuse defendant's instruction and defendant is not entitled to an aggravated robbery instruction on remand. 

For the foregoing reasons, the judgment of the circuit court of Cook county is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GREIMAN, P.J., and THEIS, J., concur.