(No. 90480

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MELVIN TISDEL, Appellee.

*Opinion filed March 15, 2002.—Rehearing denied August 29, 2002.*

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb, Kenneth T. McCurry, Eileen M. O'Neill, Theodore Fotios Burtzos and Annette Collins, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Ira S. Sheffey, Assistant Public Defender, of counsel), for appellee.

JUSTICE THOMAS delivered the opinion of the court:

Following a jury trial, defendant, Melvin Tisdel, was convicted of the first degree murder of Julio Lagunas. Defendant was sentenced to 35 years' imprisonment. The appellate court reversed defendant's conviction on the ground that the trial court should not have allowed the State's witnesses to testify concerning a nonidentification lineup. 316 Ill. App. 3d 1143. The appellate court concluded that the error was not harmless, because the evidence was closely balanced and it was possible that the jury would have reached a different verdict had the nonidentification testimony been excluded. This court thereafter granted the State's petition for leave to appeal. 177 Ill. 2d R. 315.

## BACKGROUND

Defendant's conviction was based upon the drive-by shooting of Julio Lagunas on September 3, 1995. The facts detailing the crime and the investigation leading to

defendant's arrest are set out in the appellate court's opinion (316 Ill. App. 3d 1143), and will be recited here only as necessary to an understanding of the issue before this court.

On September 3, 1995, around 5:50 p.m., 18-year-old Julio Lagunas was shot to death as he stood on the corner of Clark Street and Jarvis Avenue in Chicago. Lagunas was shot by the passenger in a passing black IROC Chevrolet Camaro. Although the driver of the Camaro was identified and arrested shortly after the shooting, defendant was not identified until almost one year later, in lineups conducted on August 16, 1996, and September 12, 1997. Ultimately there were four eyewitnesses that identified defendant as the shooter. Those eyewitnesses included Gerardo Quiroz (Gerardo), Osvaldo Quiroz (Osvaldo), Francisco Curonel (Francisco) and Jose Ramos (Jose).

Gerardo testified at trial that on September 3, 1995, he, Osvaldo and Jose were standing on the sidewalk outside the Clark Mall in Chicago when he saw a black IROC Camaro with tinted windows, chrome wheels and two tailpipes pull into the entrance to the mall parking lot. The two men inside the car tried to talk to some girls going into the mall, then drove toward the back of the mall parking lot, turned right, and came through the middle of the lot. The Camaro then stopped on the sidewalk before turning left onto Clark Street. The passenger side of the car was facing Gerardo and the others, and the window was down. At that point, the passenger pulled out a gun and pointed it at Gerardo, Osvaldo and Jose. The car then drove north onto Clark Street.

As the car drove along Clark Street, Gerardo saw Francisco across the street from the Clark Mall, in Touhy Park. Gerardo saw the passenger take out his gun and point it at Francisco. Francisco tried to hit the car with something, then ducked. The car kept driving north on

Clark Street, then stopped as Julio Lagunas and Ulysses Renteria were trying to cross Clark Street at the intersection of Jarvis and Rogers Avenue. Gerardo again saw a hand holding a gun sticking out of the passenger side window pointing at Julio and Ulysses. Gerardo heard a gunshot as the car sped up and "took off." Gerardo ran toward Julio, who was lying on the ground bleeding. Osvaldo went home before the police arrived.

Gerardo described the passenger to the police as a skinny 23-year-old black male with a light complexion and braided hair with beads on the ends. The police took Gerardo, Jose, Francisco and Ulysses (who was deceased at the time of trial) to the police station. At the station, Gerardo recognized the black Camaro involved in the shooting. Gerardo also looked at a lineup that day but did not identify anyone. Approximately one week later, Gerardo told the officers that his brother Osvaldo also had witnessed the shooting. Almost one year later, on August 16, 1996, Gerardo, Osvaldo and Francisco separately viewed a lineup at the police station. Gerardo identified defendant in the lineup as the passenger in the Camaro. Gerardo identified defendant in court as the person he recognized as the shooter in the August 16, 1996, lineup. A photo of the August 16, 1996, lineup reveals that defendant had a braided hairstyle at the time of the lineup.

Osvaldo's testimony concerning the events leading to the shooting was similar to Gerardo's testimony. Osvaldo described the passenger as a dark male who had long braided hair with black, white and blue beads at the ends. Osvaldo testified that he did not talk to the police on the day of the shooting because his mother came to the scene and told him to go home because he was too young to get involved. The next day, Osvaldo and his mother were walking on Ashland Avenue in Chicago when Osvaldo saw a green Nissan Maxima drive past. Osvaldo recog-

nized defendant as a passenger in the Maxima. Defendant stared at Osvaldo for awhile and Osvaldo stared back.

On September 12, 1995, Osvaldo spoke with police officers for the first time. On that date, Osvaldo viewed five photographs at the police station and identified the driver of the car in one of the photographs. Osvaldo told the officers he was pretty certain the person in the picture was the driver, but said he would have to see him in person. On September 21, 1995, Osvaldo went back to the police station to view a lineup. Osvaldo identified the driver of the car in the lineup. Although another individual in the lineup had his hair in braids, Osvaldo did not identify him as the shooter. On August 16, 1996, Osvaldo viewed a lineup and identified defendant as the shooter. Osvaldo also identified defendant in court as the shooter.

Francisco also testified at trial that he saw the car turn into the Clark Mall, then later pull out from the middle of the parking lot and turn north on Clark Street. Francisco heard someone yell "watch out with the car, they've got a gun." The passenger in the car threw his arm out and pointed a gun at Francisco. Francisco then threw a bag at the car then fell to the ground. Francisco started running toward Julio and Ulysses. The car slowed down when the occupants saw Julio and Ulysses. The passenger put his arm out the window with the gun in his hand. Francisco heard a shot and the car sped off. When Francisco reached Julio, Julio was lying on the ground bleeding.

That same day, Francisco went to the police station and identified a car as the Camaro involved in the shooting. Francisco also viewed a lineup around 1 a.m. and identified the driver of the car. Francisco described the passenger as a black male, 25 to 28 years old, with a skinny face and braided hair close to his head. On August 16, 1996, Francisco viewed another lineup and identified

defendant as the shooter. Francisco identified defendant in court as the person he picked out of the lineup as the shooter.

Jose testified that he was on a pay phone in front of the Clark Mall with Gerardo and Osvaldo standing nearby when a black IROC Camaro stopped in front of him on the sidewalk. The windows of the Camaro were down, so that Jose could see two males in the car. The passenger was smoking marijuana and there was a gun on the seat between the driver and passenger. The passenger grabbed the gun and put it between his legs. Jose identified defendant in court as the passenger. The car went around the mall parking lot, then came out the middle. Before the car turned left onto Clark Street, the passenger pointed a gun at Jose, Gerardo and Osvaldo. Jose described the passenger as 21 to 25 years old, dark skinned, with braids.

Jose's description of the events leading to the shooting paralleled that of Gerardo, Osvaldo and Francisco. Jose also went to the police station immediately after the shooting and identified the Camaro used in the shooting. Jose viewed a lineup that night, but did not identify anyone in the lineup. Jose viewed a second lineup on September 12, 1997, approximately one month prior to trial. Jose identified defendant in the lineup as the shooter. A photo of this lineup reveals that defendant had a different hairstyle at this lineup, with his hair short and not braided. On cross-examination, Jose testified that he did not see any beads in the shooter's hair on September 3, 1995.

As noted, following his conviction for first degree murder, defendant appealed his conviction to the appellate court claiming, *inter alia*, that he was deprived of a fair trial when the State's witnesses testified that they had viewed lineups containing persons other than defendant and had made no identification. Defendant

claimed that the State was attempting to bolster its case with the nonidentification testimony. Defendant conceded that he had not objected to the testimony at trial or in his post-trial motion, but asked the court to apply the plain error rule.

The appellate court agreed that the issue should be considered under the plain error rule. 316 Ill. App. 3d at 1154. Citing this court's opinion in *People v. Hayes*, 139 Ill. 2d 89 (1990), the appellate court noted that a witness' identification of a defendant may not be bolstered by introducing evidence that the witness failed to identify anyone else during pretrial identification procedures. 316 Ill. App. 3d at 1154. The appellate court held that the nonidentification testimony should not have been allowed because it was presented simply to corroborate the witnesses' subsequent identification of defendant. 316 Ill. App. 3d at 1154. The appellate court also held that because it was possible that the jury might have returned a different verdict had the nonidentification testimony been excluded, the error in admitting the testimony required reversal of defendant's conviction. 316 Ill. App. 3d at 1154-55. One justice wrote a special concurrence to express his "strong disagreement" with this court's position that nonidentification testimony is inadmissible. 316 Ill. App. 3d at 1158-59 (Quinn, P.J., specially concurring). This court thereafter granted the State's petition for leave to appeal that decision. 177 Ill. 2d R. 315.

## ANALYSIS

In *People v. Hayes*, 139 Ill. 2d 89, 138 (1990), this court found error in the admission of witness testimony stating that the witnesses had viewed pictures of persons other than defendant and had made no identification. This court held that the testimony violated the general rule that a witness may not testify in court as to statements made out of court for the purpose of corroborating his trial testimony concerning the same subject. *Hayes*, 139 Ill. 2d at 138.

We recognized, however, that there were two exceptions to the general rule. *Hayes*, 139 Ill. 2d at 138. One exception is where a prior consistent statement is introduced to rebut a charge or an inference that the witness is motivated to testify falsely or that his in-court testimony is of recent fabrication. *Hayes*, 139 Ill. 2d at 138. That exception did not apply in *Hayes* because the defendant had not expressly or impliedly charged that the State's witnesses were motivated to falsely identify him, but instead simply attempted to show that the witnesses may have been mistaken in their identification of him. *Hayes*, 139 Ill. 2d at 138.

The second exception to the general rule is where the out-of-court statement is one of identification. *Hayes*, 139 Ill. 2d at 138. That exception did not apply because the witnesses' out-of-court statements were not statements of identification. *Hayes*, 139 Ill. 2d at 138. Rather, the statements were that the witnesses *did not* identify the defendant from police photo books and photo arrays. *Hayes*, 139 Ill. 2d at 138. In fact, the State introduced the out-of-court statements to bolster the reliability of the witnesses' subsequent lineup and in-court identifications of the defendant. *Hayes*, 139 Ill. 2d at 138-39. This court concluded that such evidence was improperly introduced, although the evidence was not so prejudicial as to deprive defendant of a fair trial. *Hayes*, 139 Ill. 2d at 139.

In this case, the State asks this court to depart from the precedent set forth in *Hayes*. The State argues that negative identification testimony is both relevant and admissible. The State observes that in *Hayes*, this court was not presented with evidence that a witness had viewed photographs or multiple lineups containing individuals similar in appearance to the defendant. Thus, the court did not consider that a witness' failure to identify individuals similar to the defendant demon-

strates the witness' reliability and also refutes the possibility that the prior pretrial identification was based upon the suggestiveness of the identification procedure.

Defendant responds that *Hayes* is controlling authority concerning the use of pretrial nonidentification evidence. Defendant further contends that neither of the exceptions to the prior consistent statement rule apply, because there was no charge that the witnesses in this case were fabricating their testimony, nor were the statements of the witnesses statements of identification. Defendant therefore maintains that this court must affirm the decision of the appellate court.

Upon review, we find this court's determination in *Hayes* concerning nonidentification testimony to be flawed. The *Hayes* court acknowledged that there was an exception to the general rule where an out-of-court statement is one of identification. *Hayes*, 139 Ill. 2d at 138. The court then held that the nonidentification testimony was not admissible under this exception because the statements were not statements of identification. *Hayes*, 139 Ill. 2d at 138. We believe the *Hayes* court construed the term "statements of identification" too narrowly.

At the outset we note that nonidentification evidence is inherent in most "statements of identification." As Justice Quinn observed in his special concurrence to the appellate court opinion in this case, when identifying a defendant from a lineup or photo array, a witness necessarily does not identify the remaining individuals in the lineup or photo array. See 316 Ill. App. 3d at 1163 (Quinn, P.J., specially concurring). This type of nonidentification is crucial to the accuracy of the witness' identification because, in the typical case, a witness is shown a group of similar looking individuals and asked to pick out only the one who committed the crime. Consequently, the fact that the witness *did not* pick the other individuals in the lineup becomes as important as the fact that the witness

*did* pick the defendant. Given the crucial role that non-identification plays with regard to a lineup or photo array where a defendant is *positively* identified, it follows that the same considerations apply with regard to those lineups or photo arrays where a defendant is *not* identified. Indeed, it is logical to presume that the more lineups and photo arrays a witness views, the more likely that witness' identification is reliable and is not based upon suggestiveness.

With the foregoing in mind, we find that the *Hayes* court erred in limiting "statements of identification" to a witness' actual identification of a defendant. This interpretation mistakenly focuses on the result rather than the process. As a consequence, a trier of fact may be deprived of information necessary to an informed decision concerning a witness' reliability. In contrast, construing "statements of identification" to include the entire identification process would ensure that a trier of fact is fully informed concerning the reliability of a witness' identification, as well as the suggestiveness or lack thereof in that identification.

Justice Quinn, in his special concurrence, pointed out this potential problem with limiting "statements of identification" to only positive identifications. Justice Quinn noted that the court's holding would:

> "require the State on retrial to confine its evidence on the subject of identification of the defendant to the date of the first identification—one year (or two) after the shooting. What is the jury to make of this delay? The defense will attack the investigation and the State will be precluded from explaining what investigatory steps were taken from the time of the shooting to the first lineup identification." 316 Ill. App. 3d at 1162 (Quinn, P.J., specially concurring).

That the entire identification process includes both identification and nonidentification evidence has been given tacit approval by the United States Supreme Court. In *Neil v. Biggers*, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S.

Ct. 375 (1972), the Court held that although a showup procedure was unnecessarily suggestive, there was no substantial likelihood of misidentification requiring evidence of the identification to be excluded. The Court noted various factors weighing in favor of the admission of the identification. Among those factors was that the victim had looked at numerous photographs, lineups and showups in the seven-month time period between the crime and her identification of the defendant as the perpetrator. *Biggers*, 409 U.S. at 201, 34 L. Ed. 2d at 412, 93 S. Ct. at 383. Specifically, the Court stated that:

> "There was, to be sure, a lapse of seven months between the rape and the confrontation. This would be a seriously negative factor in most cases. Here, however, the testimony is undisputed that the victim made no previous identification at any of the showups, lineups, or photographic showings. *Her record for reliability was thus a good one, as she had previously resisted whatever suggestiveness inheres in a showup.*" (Emphasis added.) *Biggers*, 409 U.S. at 201, 34 L. Ed. 2d at 412, 93 S. Ct. at 383.

Obviously, the admissibility of nonidentification evidence is limited by considerations of relevance. If nonidentification evidence is not relevant, it should be excluded from evidence. For example, evidence that a witness viewed a lineup containing red-haired, blue-eyed men would not be relevant or admissible if the witness described the perpetrator as a blond-haired, brown-eyed man. However, evidence that a witness viewed a lineup containing individuals similar in appearance to the defendant but did not identify anyone would be relevant to the identification process.

In this case, the trial court properly allowed the witnesses to testify concerning the nonidentification lineups. As in *Biggers*, there was a significant lapse of time between the shooting of Julio and the witnesses' identification of defendant. Consequently, the fact that some of the witnesses had viewed prior lineups and did not identify anyone was relevant in demonstrating the reli-

ability of the subsequent identifications. This is especially true with regard to the lineup viewed by Osvaldo, which contained not only the driver of the Camaro, but also an individual similar in appearance to defendant, including defendant's distinctive hairstyle—braids or cornrows.

We further note that the gravamen of the defense was that the witnesses were mistaken in their identification of defendant as the shooter. Defense counsel extensively cross-examined the witnesses concerning their ability to observe the shooter, their level of attention to the occupants in the Camaro, and the almost one-year length of time between the shooting and the lineup identification of defendant. Under the circumstances, the process leading to the lineup identification, including nonidentification lineups, was relevant to the witnesses' ultimate identification of defendant as the shooter.

Because we find that this court in *Hayes* erred in finding that nonidentification evidence was not admissible under the "statement of identification" exception to the general rule, and therefore depart from that holding, it follows that the appellate court in this case erred in reversing defendant's conviction based upon our holding in *Hayes*. We therefore reverse the decision of the appellate court and affirm defendant's conviction and sentence.

For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE McMORROW, dissenting:

At issue in this appeal is whether the trial court erred in allowing witnesses for the State in a murder prosecution to testify concerning a nonidentification lineup. In answering this question in the negative, the majority neither discusses nor makes citation to this court's decision in *People v. Jones*, 153 Ill. 2d 155 (1992), a unani-

mous ruling less than 10 years old which addresses the precise issue at bar, and which compels a result opposite to the majority's ruling. The majority also overrules, without cogent reason, this court's decision in *People v. Hayes*, 139 Ill. 2d 89 (1990). Because the majority's conclusion represents an unwarranted departure from this court's holdings in *Jones* and *Hayes*, I respectfully dissent.

This appeal has its genesis in the conviction of defendant, by a jury, of the first degree murder of Julio Lagunas, who was killed in a drive-by shooting on September 3, 1995. During defendant's trial, the State called four eyewitnesses who identified defendant as the passenger who shot Lagunas. Three of the four eyewitnesses stated that they identified defendant as the gunman from a lineup conducted on August 16, 1996, and the fourth eyewitness stated that he had picked defendant out of a lineup on September 12, 1997. The State elicited from all four witnesses that, prior to viewing the lineup from which they identified defendant, they viewed another lineup (which did not include defendant) from which they did not identify anyone as being the gunman.

On appeal, defendant argued that the trial court erred in allowing the State to impermissibly bolster its case by introducing the witnesses' nonidentification testimony. According to defendant, the State improperly relied upon the nonidentifications to show how careful the witnesses were in their ultimate identification of defendant. A majority of the appellate court panel agreed with the defendant's contentions. Relying upon this court's 1990 decision in *Hayes*, 139 Ill. 2d 89, the majority of the panel concluded that the State may not bolster a witness' identification of a defendant by introducing evidence that the witness failed to identify anyone else during pretrial identification procedures. The appellate court determined that the nonidentification testimony

should not have been allowed because "it was presented simply to corroborate the witnesses' subsequent identification of defendant." 316 Ill. App. 3d at 1154. Furthermore, the panel determined that this error could not be considered harmless, since the evidence in the case was closely balanced. The appellate court majority noted that "none of the eyewitnesses knew defendant or viewed him for a considerable length of time," that there was "no physical evidence linking defendant to the crime," that "defendant was not arrested near the scene," and that "[d]efendant did not confess." 316 Ill. App. 3d at 1153-54. Further, the appellate court majority observed that a "substantial amount of time [had] elapsed between the offense and the lineup identifications," with three of the witnesses identifying defendant almost a year after the shooting, and another witness identifying defendant two years after the shooting. 316 Ill. App. 3d at 1154. The appellate court majority concluded that, under these facts, it was "quite possible that the jury would have returned a different verdict had the nonidentification testimony been excluded." 316 Ill. App. 3d at 1154.

The majority now reverses the judgment of the appellate court, and holds that this court "erred" in its *Hayes* decision. For the reasons fully set forth below, I disagree with the majority's conclusion.

In *People v. Hayes*, 139 Ill. 2d 89 (1990), the defendant was convicted of murder and armed robbery. On appeal, the defendant alleged that the trial court committed reversible error when four prosecution witnesses were allowed to testify that, prior to identifying the defendant, they viewed photographs of individuals other than the defendant and made no identification. Defendant argued that such nonidentification evidence was "irrelevant and highly prejudicial" because "testimony that the witnesses viewed pictures of persons other than the defendant and made no identification was no more relevant than

evidence that the witnesses did not view the defendant at an athletic event or shopping mall." *Hayes*, 139 Ill. 2d at 137. This court unanimously agreed with the defendant's assertion that the nonidentification testimony should not have been admitted, holding that it "violated the general rule that a witness, although present in court and subject to cross-examination, may not testify as to statements he made out of court for the purpose of corroborating his testimony given at trial relative to the same subject." *Hayes*, 139 Ill. 2d at 138. Indeed, the general rule of evidence cited in *Hayes* barring, as hearsay, the admission of prior out-of-court statements to bolster in-court testimony on the same subject has long been a part of this court's jurisprudence. See, *e.g.*, *People v. Clark*, 52 Ill. 2d 374, 389 (1972); *People v. Wesley*, 18 Ill. 2d 138, 153-54 (1959); *Lyon v. Oliver*, 316 Ill. 292, 303 (1925); *People v. Fox*, 269 Ill. 300, 323 (1915); *Gates v. People*, 14 Ill. 433, 438 (1853). *Hayes*, however, was the first case in which this court applied this well-settled rule of evidence to bar a witness' nonidentification testimony.

As is noted in *Hayes*, this court has traditionally recognized two exceptions to the general rule that a witness may not testify as to out-of-court statements for the purpose of bolstering in-court testimony relative to the same subject. First, it is well settled that a prior consistent statement is not barred by the hearsay rule, and is therefore admissible, if the statement is offered to rebut a charge or inference that the witness is motivated to testify falsely or that the witness' in-court testimony is of recent fabrication. *Hayes*, 139 Ill. 2d at 138, citing *Clark*, 52 Ill. 2d at 388-90; see also *Lyon*, 316 Ill. at 303; *Gates*, 14 Ill. at 438. The *Hayes* court determined that this exception did not apply to the facts before it because the defendant had simply attempted to show that the witnesses may have mistakenly identified him, and did

not expressly or impliedly allege that the State's witnesses were motivated to falsely identify him. *Hayes*, 139 Ill. 2d at 138.

Further, as *Hayes* made clear, it is well settled that the bar against hearsay does not apply where a prior out-of-court statement is one of identification. Accordingly, statements with respect to a prior identification of the defendant are admissible. *Hayes*, 139 Ill. 2d at 138, citing *People v. Rogers*, 81 Ill. 2d 571, 578-79 (1980); see also 725 ILCS 5/115—12 (West 2000). The court in *Hayes* relied upon this court's prior decision in *Rogers*, wherein the rationale for this exception was explained: "[B]y the time of trial, the witness' mind has become so conditioned that there is little likelihood that he would not identify the person [defendant] in court *** '*** therefore, it is entirely proper *** to prove that at a former time, when the suggestions of others could not have intervened to create a fancied recognition in the witness' mind, he recognized and declared the present accused to be the person.' " (Emphasis omitted.) *Rogers*, 81 Ill. 2d at 578-79, quoting 4 J. Wigmore, Evidence § 1130, at 277 (Chadbourn rev. ed. 1972). The *Hayes* court determined that the witnesses' statements that they viewed photographs of persons other than the defendant and made no identification were inadmissible under the "identification" exception to the hearsay bar. The court held that the statements at issue were *not* statements of *identification*; rather, they were statements of *non*identification. *Hayes*, 139 Ill. 2d at 138.

Accordingly, because the challenged testimony in *Hayes* did not fall within either exception to the general rule barring admission of prior consistent statements, this court held that the State "improperly introduced these prior consistent statements to bolster the reliability of the witnesses' subsequent lineup and in-court identifications of the defendant." *Hayes*, 139 Ill. 2d at 138-39.

However, although the *Hayes* court determined that the nonidentification evidence was improperly admitted, the court concluded that, under the facts before it, the evidence was not so prejudicial that it deprived the defendant of a fair trial, as there was overwhelming evidence of the defendant's guilt. *Hayes*, 139 Ill. 2d at 139.

According to the majority opinion in the matter at bar, the "State asks this court to depart from the precedent set forth in *Hayes* \*\*\* [because] in *Hayes*, this court was not presented with evidence that a witness had viewed photographs or multiple lineups containing individuals similar in appearance to the defendant." 201 Ill. 2d at 217. The State therefore asserts, and the majority agrees, that this court has not previously been afforded the opportunity to consider whether a witness' failure to identify individuals similar to defendant demonstrates the witness' reliability, and whether such nonidentification refutes the possibility that the prior pretrial identification was premised upon the suggestiveness of the identification procedure. 201 Ill. 2d at 217-18.

Contrary to the argument advanced by the State and accepted by the majority, this court has, in fact, previously considered and rejected an argument identical to that raised by the State at bar. Two years after this court decided *Hayes*, the principles of *Hayes* were unanimously reaffirmed in *People v. Jones*, 153 Ill. 2d 155 (1992), a decision which is conspicuously absent from the majority's opinion. In *Jones*, the defendant was found guilty of armed robbery and aggravated unlawful restraint. On appeal, the defendant argued that the trial court erred when it allowed the victim of the crime to testify concerning her nonidentification of the defendant. Specifically, the victim stated that prior to identifying the defendant in a lineup, she had viewed another lineup (which did not include the defendant) and failed to identify anyone.

Relying upon the decision in *Hayes*, this court determined in *Jones* that the trial court erred in allowing the State to introduce evidence of the victim's failure to identify the defendant in a prior lineup. The *Jones* court explicitly rejected the argument advanced by the State that the victim's nonidentification testimony "was necessary to counter the defense's allegation that the lineup was overly suggestive and that the identification was therefore not trustworthy." *Jones*, 153 Ill. 2d at 162. Significantly, this court concluded that the State's argument was "simply a fancy way to argue that it was necessary to corroborate [the victim's] testimony, which is precisely what *Hayes* disallows." *Jones*, 153 Ill. 2d at 162.

Despite the fact that *Jones* previously presented this court with the question of the admissibility of nonidentification evidence in the context of multiple lineups, and despite the fact that this court in *Jones* unanimously upheld the principles of *Hayes* and rejected arguments substantially similar to those proffered by the State in the case at bar, the majority nevertheless concludes that the argument now advanced by the State has merit, and finds "this court's determination in *Hayes* concerning nonidentification testimony to be flawed." 201 Ill. 2d at 218.

Specifically, the majority holds that "this court in *Hayes* erred in finding that nonidentification evidence was not admissible under the 'statement of identification' exception to the general rule," causing the majority to "depart from that holding." 201 Ill. 2d at 221. In arriving at this conclusion, the majority necessarily violates the doctrine of *stare decisis* by omitting any discussion of, or citation to, the controlling precedent of *Jones*. Indeed, the majority opinion is notable for its complete silence with respect to the application of the principle of *stare decisis* while overturning two recent and unanimous decisions of this court. In addition, the majority fails to

228

make citation to any authority subsequent to *Hayes* and *Jones* which would warrant or compel this court to stray from the principles of *stare decisis* and reevaluate the well-settled evidentiary rules set forth in those decisions.

The doctrine of *stare decisis* "proceeds from the first principle of justice, that, absent powerful countervailing considerations, like cases ought to be decided alike." 5 Am. Jur. 2d *Appellate Review* § 599 (1995); see also *Neff v. George*, 364 Ill. 306, 308-09 (1936) (*stare decisis* requires this court to follow and apply its own precedent and not disturb settled points of law). The doctrine of *stare decisis* "is the means by which courts ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion *** [apart from] the proclivities of individuals." *Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502, 510 (1994). Indeed, prior to the majority's opinion at bar, the law in this area had in fact been developing in a "principled and intelligible fashion," as evidenced by our reaffirmation of *Hayes* in *Jones*, as well as by our appellate court's consistent application of the principles of *Hayes* and *Jones* in determining that the State's presentation of negative identification evidence improperly bolsters a witness' subsequent identification of a defendant and constitutes inadmissible hearsay. See, *e.g.*, *People v. Jones*, 293 Ill. App. 3d 119 (1997); *People v. Davis*, 285 Ill. App. 3d 1039 (1996); *People v. Biggers*, 273 Ill. App. 3d 116 (1995); *People v. Berry*, 264 Ill. App. 3d 773 (1994); *People v. Berry*, 241 Ill. App. 3d 993 (1993).

It is well settled that prior precedent should be overturned "only on the showing of good cause" (*Heimgaertner v. Benjamin Electric Manufacturing Co.*, 6 Ill. 2d 152, 167 (1955)), only where there is " 'special justification' " for the departure (*Chicago Bar Ass'n*, 161 Ill. 2d at 510, quoting *Arizona v. Rumsey*, 467 U.S. 203, 212, 81 L. Ed. 2d 164, 172, 104 S. Ct. 2305, 2311 (1984)),

and only where the reasons for departure are "compelling" (*People v. Robinson*, 187 Ill. 2d 461, 463-64 (1999)). Accordingly, this court has recognized that it will not depart from precedent " 'merely because the court is of the opinion that it might decide otherwise were the question a new one.' " *Robinson*, 187 Ill. 2d at 464, quoting *Maki v. Frelk*, 40 Ill. 2d 193, 196-97 (1968); see also *Prall v. Burckhartt*, 299 Ill. 19, 41 (1921) (it is "indispensable to the due administration of justice, especially by a court of last resort, that a question once deliberately examined and decided should be considered as settled and closed to further argument, and the courts are slow to interfere with the principle announced by the decision and it may be upheld even though they would decide otherwise were the question a new one"). Indeed, "[i]f the law were to change with each change in the makeup of the court, then the concept that ours is a government of law and not of men would be nothing more than a pious cliche." *People v. Lewis*, 88 Ill. 2d 129, 167 (1981) (Ryan, J., concurring).

The majority has advanced no principled basis, let alone "good cause," "compelling reason," or "special justification," for departing from the holding in *Hayes* and *Jones* that statements of nonidentification do not fall within the hearsay exception allowing the admission of prior statements of identification. The majority, tracking the analysis of Justice Quinn's special concurrence below, concludes that by excluding nonidentification testimony from the "statements of identification" hearsay exception, the *Hayes* court erred by construing that term "too narrowly." 201 Ill. 2d at 218. Specifically, the majority holds that the decision in *Hayes* erred by "limiting 'statements of identification' to a witness' actual identification of a defendant," because, in the majority's view, this interpretation "mistakenly focuses on the result," *i.e.*, the ultimate identification of the

defendant, rather than on "the process" which preceded the identification. According to the majority, "the process" of identification includes the viewing of any prior lineups and/or photo arrays where no identification of a suspect was made. 201 Ill. 2d at 219. It is the majority, however, which has erred in attempting to unreasonably stretch the scope of the identification exception not only beyond its plain language, but also beyond its intended purpose.

Generally, the bar against admission of hearsay evidence prevents a witness from testifying to statements he or she made out of court for the purpose of corroborating that witness' testimony given at trial relative to the same subject. An exception to this general rule of inadmissibility is made, however, when the extrajudicial statements concern the witness' pretrial identification of the defendant. It is self-evident that a witness' statement that he or she was unable to identify a suspect is not a "statement of identification." In holding that the hearsay exception applies not only to actual statements of identification, but also to the "process" of identification encompassing lineups and photo arrays where the witness is unable to make an identification, the majority has performed a judicial sleight of hand. The majority has transformed a witness' statement that he or she did *not* identify a suspect during prior lineups and/or photo arrays into a "statement of identification."

In addition to unduly stretching the hearsay exception for evidence of identification beyond its plain meaning, the majority also expands the scope of this exception beyond its intended purpose. As stated, this court in *Rogers* held that the general rule that a witness may not testify as to statements he or she made out of court for the purpose of corroborating in-court testimony relative to the same subject does not apply to statements of identification. The *Rogers* court explained that the

justification for holding that evidence of a witness' pretrial identification of a defendant does not constitute impermissible hearsay is premised on the notion that " 'it is entirely proper *** to prove that at a former time, when the suggestions of others could not have intervened to create a fancied recognition in the witness' mind, he recognized and declared the present accused to be the person.' " (Emphasis omitted.) *Rogers*, 81 Ill. 2d at 579, quoting 4 J. Wigmore, Evidence § 1130, at 277 (Chadbourn rev. ed. 1972). Indeed, as the *Rogers* court observed, because "by the time of trial, the witness' mind has become so conditioned that there is little likelihood that he would not identify the person [defendant] in court," it is entirely appropriate to admit evidence of the witness' prior out of court identification of the defendant to corroborate the witness' in-court identification. *Rogers*, 81 Ill. 2d at 578-79.[1] The rationale for admitting pretrial identification evidence has no application to the admission of statements of nonidentification. Accordingly, this court's decisions in *Hayes* and *Jones,* exercising sound reasoning and logic, were correct in holding that evidence of nonidentification did not fall within the "statements of identification" hearsay exception.

Advancing past the plain language and purpose of the identification exception to the hearsay rule, the majority concludes that a witness' pretrial identification of a defendant should be viewed as a "process" rather

---

[1]In response to this court's decision in *Rogers*, the Illinois General Assembly enacted Public Act 83—367 (Pub. Act 83—367, eff. January 1, 1984), which added section 115—12 to the Code of Criminal Procedure of 1963 (725 ILCS 5/115—12 (West 2000)). Section 115—12 codified our ruling in *Rogers* by creating a statutory exception to the hearsay rule that allows for the admissibility of prior identification evidence. The statute's mandate that the statement must be "one of identification of a person made after perceiving him," further supports the argument that evidence of *non*identification does not fall within this hearsay exception.

than as a "result." According to the majority, the identification exception to the hearsay rule should allow the admission of statements that the witness failed to make an identification from a lineup or photo array, if those statements are relevant to the ultimate out-of-court identification made by the witness. This result is desirable, the majority reasons, because allowing evidence with respect to a witness' nonidentification of a defendant would ensure that a trier of fact is not only "fully informed concerning the reliability" of the witness' out-of-court identification, but is also fully informed with respect to the fact of "the suggestiveness or lack thereof in that identification." 201 Ill. 2d at 219. In other words, the majority has determined that hearsay statements of nonidentification may be used to bolster the reliability of another hearsay statement—the actual out-of-court identification of the defendant. A close analysis of the majority's reasoning confirms that it does not provide a principled basis for reaching this result.

First, the majority notes that "when identifying a defendant from a lineup or photo array, a witness necessarily does not identify the remaining individuals in the lineup or photo array." 201 Ill. 2d at 218. The majority finds that this nonidentification is "crucial to the accuracy of the witness' identification" because the fact that the witness did not select other individuals in a lineup becomes as important as the fact that the witness did select the defendant. 201 Ill. 2d at 218-19. The majority further submits that "it is logical to presume that the more lineups and photo arrays a witness views, the more likely that witness' identification is reliable and is not based upon suggestiveness." 201 Ill. 2d at 219.

I disagree. Evidence that a witness failed to identify a suspect prior to the identification of the defendant is nonprobative hearsay. When assessing the reliability of an identification made during a lineup or after viewing a

photo array, the crucial question is whether the witness accurately identified the defendant as the perpetrator of the crime. The fact that the witness viewed several lineups or photo arrays in which the witness did not identify the defendant says nothing about the accuracy of the identification at issue. In addition, what occurred during other pretrial identification procedures reveals no information with respect to the influences which may have been present on the witness at the time of the actual identification of the defendant. For example, the nonidentification evidence offers no information with respect to whether the witness' actual identification of the defendant was animated by suggestive practices on the part of the police, whether the witness' identification was motivated by malice against the defendant, or whether simple fatigue factored into the witness' identification. Finally, the admission of nonidentification evidence in the State's case in chief creates a problem of circular reasoning, as the only means to measure the accuracy of the witness' "nonidentification" is the identification itself, the very fact at issue in the case.

Although the majority also suggests that the introduction of nonidentification evidence will assist the State in explaining delays in identification, the nonidentification evidence does not mitigate the fact that a specific amount of time has elapsed after the witness observed the perpetrator of the crime and the time when the identification of a defendant is ultimately made. Admission of nonidentification evidence may have little, if any, effect in countering the logical inference that an identification made one or two years after the commission of a crime is to be viewed with a degree of skepticism.

The only citation to authority made by the majority in its opinion in support of overruling *Hayes* and *Jones* is to the 1972 decision of the United States Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S.

Ct. 375 (1972). However, the High Court's decision in *Biggers* is inapposite to the matter at bar. At issue in *Biggers* was whether the procedure leading to the victim's pretrial identification of the defendant was " 'so unnecessarily suggestive and conducive to irreparable mistaken identification' " that it violated the defendant's right to due process, and thereby rendered the identification inadmissible. *Biggers*, 409 U.S. at 196, 34 L. Ed. 2d at 409, 93 S. Ct. at 380, quoting *Stovall v. Denno*, 388 U.S. 293, 301-02, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972 (1967). The Justices held that in ruling upon a challenge to the type of procedure used to secure a pretrial identification, a court must engage in a two-part inquiry: first, whether the process was impermissibly suggestive; and, second, assuming suggestion, whether under the totality of the circumstances the identification was nevertheless reliable and, therefore, admissible. *Biggers*, 409 U.S. at 199, 34 L. Ed. 2d at 411, 93 S. Ct. at 382.

In *Biggers*, the victim had identified the defendant after the police had conducted a "showup," which consisted of two detectives walking the defendant past the victim. Although the Court held that the showup procedure was suggestive, it declined to hold that it amounted to a *per se* violation of due process. The Court determined that the pertinent question is whether, under the totality of the circumstances, the victim's identification of the defendant was reliable even though the confrontation procedure was suggestive. The Court then listed the factors to be considered in evaluating the likelihood of misidentification, including the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the perpetrator, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation. *Biggers*, 409 U.S. at 199-200, 34 L. Ed. 2d at 411, 93 S. Ct. at 382.

Applying these factors to the case before it, the High Court found that because there was no substantial likelihood that the victim had misidentified the defendant, the victim's pretrial identification was properly admitted. In the course of their analysis, the Justices observed that there was a seven-month lapse between the crime and the showup, and that this passage of time "would be a seriously negative factor in most cases." The Court, however, noted that under the totality of the circumstances, the victim made "no previous identification," that "she had previously resisted whatever suggestiveness inheres in a showup," and that her "record for reliability was thus a good one." *Biggers*, 409 U.S. at 201, 34 L. Ed. 2d at 412, 93 S. Ct. at 383.

Perhaps recognizing that the *Biggers* decision is inapposite to the matter before us, the majority acknowledges that *Biggers* provides only "tacit" approval (201 Ill. 2d at 219) for the majority's conclusion that nonidentification evidence is admissible under the identification exception to the hearsay rule. As stated, the question addressed in *Biggers* was whether the pretrial *identification* of the defendant was so suggestive as to increase the likelihood of misidentification to such a level that it would violate defendant's right to due process and thereby be inadmissible. The question of the admissibility of nonidentification evidence was not raised in *Biggers*, and no mention of "nonidentification" was made when the Court set forth the specific factors to be considered in evaluating the admissibility of the pretrial identification. In sum, *Biggers* neither holds nor suggests that nonidentification evidence is admissible under the "statements of identification" exception to the hearsay rule. As a final point, I further note that the *Biggers* decision had been established law for almost two decades by the time this court decided *Hayes* in 1990.

In sum, the majority has advanced no principled basis

236

for overruling this court's unanimous and well-reasoned decisions in *Jones*, a ruling which the majority neither cites nor discusses in its opinion, and in *Hayes*. In an effort to achieve a desired result, the majority has unreasonably stretched the identification exception to the hearsay bar to hold that statements of nonidentification also constitute "statements of identification." The exception for "statements of identification" means just that— the plain language and purpose of the exception requires that the statement be of "identification," and not the opposite. Accordingly, I respectfully dissent.

JUSTICES FREEMAN and KILBRIDE join in this dissent.